SINKLER *v.* MISSOURI PACIFIC RAILROAD CO.

No. 133.  Argued March 12–13, 1958.—Decided April 28, 1958.

*Cornelius O. Ryan* argued the cause for petitioner. With him on the brief were *Robert H. Kelley* and *J. Edwin Smith.*

*Roy L. Arterbury* argued the cause for respondent. With him on the brief was *Walter F. Woodul.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The petitioner was employed by the respondent railroad as a cook on the private car of respondent's general manager.  He was working on the car when a switching crew, employed by the Houston Belt & Terminal Railway Company (hereinafter the Belt Railway), undertook to switch the car from one track to another in the Union Station at Houston, Texas.  Through the fault of the switching crew, the car was caused violently to collide with another railroad car in the station, and the petitioner was injured.  He recovered a judgment against the respondent in an action brought under the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U. S. C. §§ 51–60, in the District Court of Harris County, Texas.

The Court of Civil Appeals for the Ninth Supreme Judicial District of Texas reversed upon the ground that the FELA did not subject the respondent to liability for injuries of its employee caused by the fault of employees of the Belt Railway. 295 S. W. 2d 508. The Supreme Court of Texas denied the petitioner's application for writ of error. We granted certiorari. 355 U. S. 809.

Neither the respondent railroad nor its predecessors have, since 1905, performed switching operations in the Houston terminal area. Switching is a vital operational activity of railroading consisting in the breaking up and assembly of trains and the handling of cars in interchange with other carriers. This function, in the Houston area, has been contracted by the respondent and its predecessors, and other carriers, to the Belt Railway, a carrier specially organized for that purpose.

The Belt Railway was organized by several carriers, including the predecessors of the respondent,[1] to own and operate the Union Station and to perform these switching operations. The organizing carriers, or their successors, own the Belt Railway's stock and are represented on its Board of Directors in proportion to their holdings. The respondent owns one-half of the stock and designates one-half of the directors. The Belt Railway receives some income from nonstockholding carriers but the carrier stockholders otherwise share the net expenses of its operations according to an agreed formula. The Belt Railway employs its own switching crews and other

---

[1] The stock of the Belt Railway was originally subscribed to by four railroad corporations. The two which were predecessors in interest to the present respondent were the Beaumont, Sour Lake & Western and the St. Louis, Brownsville & Mexico. This suit was brought originally against Thompson, Trustee in Bankruptcy for these two roads. Upon their reorganization as part of the Missouri Pacific, the respondent was substituted as party defendant.

personnel, and owns and operates the facilities and rolling stock used in the switching operations.

A railroad's liability under § 1 of the FELA is to compensate its employees in damages for injuries resulting in whole or in part from the fault of "any of the officers, agents, or employees" of such carrier. 45 U. S. C. § 51. No question of liability for the fault of officers or employees of the respondent is here raised, but only whether the petitioner's injuries were due to the fault of "agents" of the respondent within the meaning of the section.

The Court of Civil Appeals held that, since the Belt Railway was an independent contractor under lawful contract with respondent to do the switching operations on its behalf, the petitioner's injuries were not caused by respondent's "agents." The Court of Civil Appeals applied the general rule that the doctrine of *respondeat superior* does not extend to independent contractors and concluded that, since the evidence was insufficient to show that the respondent exercised control over the details of the Belt Railway's operations, the fault of its switching crew was not imputable to the respondent.[2]

It should first be noted that some common-law jurisdictions recognized an exception to the general rule of *respondeat superior* when a railroad engaged an independent contractor to perform operational activities required to carry out the franchise. In that circumstance the railroad was held liable for the fault of the servants of the independent contractor even though the railroad did not control the manner or method by which the latter did the contracted work. Different theories supported this

---

[2] The jury, in response to special issues submitted to it by the trial judge, had expressly found that the Belt Railway "submits itself to the right of control and supervision of the other [respondent] with respect to all the details of such work."

liability, depending upon whether the person injured was an employee of the railroad, a passenger, or a third party. In the case of the employee the theory was phrased as a nondelegable duty of care springing from the contractual relationship between employer and employee, *Floody* v. *Great Northern R. Co.*, 102 Minn. 81, 112 N. W. 875, or as a duty springing from the franchise to see that no wrong is done through the exercise by other persons of chartered powers. *North Chicago Street R. Co.* v. *Dudgeon*, 184 Ill. 477, 56 N. E. 796. However phrased, substantial authority in common-law decisions supported recovery by the railroad employee from his employer for injuries caused by the fault of employees of an independent contractor performing a part of the employer's railroad operations.[3]

However, in interpreting the FELA, we need not depend upon common-law principles of liability. This statute, an avowed departure from the rules of the common law, cf. *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 507–509, was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety. *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U. S. 54. The cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier. *Kernan* v. *American Dredging Co.*, 355 U. S. 426, 431, 438. The Senate Committee

---

[3] *Wabash, St. L. & P. R. Co.* v. *Peyton*, 106 Ill. 534, 46 Am. Rep. 705; *Burnes* v. *Kansas City, Ft. S. & M. R. Co.*, 129 Mo. 41, 31 S. W. 347; *Story* v. *Concord & M. R. Co.*, 70 N. H. 364, 48 A. 288; *Gulf, C. & S. F. R. Co.* v. *Shelton*, 96 Tex. 301, 72 S. W. 165; *Gulf, C. & S. F. R. Co.* v. *Shearer*, 1 Tex. Civ. App. 343, 21 S. W. 133; *Fort Worth & D. C. R. Co.* v. *Smith*, 39 Tex. Civ. App. 92, 87 S. W. 371; but see *Brady* v. *Chicago & G. W. R. Co.*, 114 F. 100.

which reported the Act stated that it was designed to achieve the broad purpose of promoting

> "the welfare of both employer and employee, by adjusting the losses and injuries inseparable from industry and commerce to the strength of those who in the nature of the case ought to share the burden." S. Rep. No. 460, 60th Cong., 1st Sess. 3.

Thus while the common law had generally regarded the torts of fellow servants as separate and distinct from the torts of the employer, holding the latter responsible only for his own torts, it was the conception of this legislation that the railroad was a unitary enterprise, its economic resources obligated to bear the burden of all injuries befalling those engaged in the enterprise arising out of the fault of any other member engaged in the common endeavor. Hence a railroad worker may recover from his employer for an injury caused in whole or in part by a fellow worker, not because the employer is himself to blame, but because justice demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered. If this standard is not met and injury results, the worker is compensated in damages.

This broad purpose controls our decision in determining whether the Belt Railway and its switching crew were "agents" of the respondent within the meaning of the section.[4] Plainly an accommodating scope must be given

---

[4] It may be significant that there was omitted from the section as enacted the language in the original bills which would have imposed liability upon a carrier for the fault "of any other person subject to

to the word "agents" to give vitality to the standard governing the liability of carriers to their workers injured on the job.[5]  See *Kernan* v. *American Dredging Co., supra,* at 431–432, 438–439.

In the present case the respondent, rather than doing the necessary switching incident to its business in the Houston Terminal area, arranged that the Belt Railway should supply the crews and equipment to perform this operation on its behalf.  But the evidence clearly establishes that the respondent's trains, when under the control of the Belt Railway's switching crews, were being handled to further the task of the respondent's enterprise.  While engaged in switching and handling respondent's cars and trains about the terminal area, the Belt Railway employees on the job were, for purposes of the FELA, as much a part of the respondent's total enterprise as was the petitioner while engaged in his regular work on the respondent's car.

It is manifest that the corporate autonomy of the Belt Railway, and its freedom from detailed supervision of its operations by respondent, are irrelevant inasmuch as the switching crew of the Belt Railway Company at the moment of the collision in the station was engaged in furthering the operational activities of respondent.  We therefore hold that when a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer,

---

its control."  Hearings before the Senate Committee on Education and Labor on S. 5307, 60th Cong., 1st Sess. 3, 34; Hearings before the House Committee on the Judiciary on H. R. 17036, 60th Cong., 1st Sess. 3, 34.

[5] Respondent's reliance on *Robinson* v. *Baltimore & O. R. Co.,* 237 U. S. 84, and *Linstead* v. *Chesapeake & O. R. Co.,* 276 U. S. 28, is misplaced.  The issue in each of those cases was whether the plaintiff was an employee of the defendant railroad.

such others are "agents" of the employer within the meaning of § 1 of FELA.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE CLARK concurs in the result, believing that for purposes of the FELA, the Belt Railway was performing a nondelegable duty of respondent's at the time of petitioner's injury.

MR. JUSTICE WHITTAKER, believing that petitioner was not only respondent's employee but, in the circumstances of this case, was also its *passenger* at the time and place in question and that respondent's franchised carrier responsibilities to him as its passenger were nondelegable, concurs in the result of this opinion.

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANK-FURTER joins, dissenting.

This case is a further step in a course of decisions through which the Court has been rapidly converting the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U. S. C. §§ 51–60 (and the Jones Act, which incorporates the FELA, 41 Stat. 1007, 46 U. S. C. § 688), into what amounts to a workmen's compensation statute.

This process recently gained marked momentum with *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 524, 559, decided at the 1956 Term, where the Court in effect established a "scintilla" rule in these cases for judging the sufficiency of the evidence on the issue of "causation." In subsequent decisions that rule has been extended, *sub silentio,* to cover also the issue of "negligence." [1]  More

[1] *Webb* v. *Illinois Central R. Co.*, 352 U. S. 512; *Ferguson* v. *Moore-McCormack Lines, Inc.*, 352 U. S. 521; *Shaw* v. *Atlantic Coast Line R. Co.*, 353 U. S. 920; *Futrelle* v. *Atlantic Coast Line*

recently in *Kernan* v. *American Dredging Co.,* 355 U. S. 426, decided a few months ago, the Court still further expanded these enactments to embrace a concept of absolute liability for violation of any statutory duty occasioning injury to one entitled to sue under them. And today we are told that ". . . when a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of § 1 of FELA." This is held to be so even though it has long been customary in railroading for carriers to delegate to others activities such as the switching operation here, see *Fort Worth Belt R. Co.* v. *United States,* 22 F. 2d 795, and notwithstanding that under traditional common-law concepts those performing such specialized activities would be regarded as independent contractors.[2] See, *e. g., Brady* v. *Chicago & G. W. R. Co.,* 114 F. 100, 108–112; *Moleton* v. *Union Pacific R. Co.,* 118 Utah 107, 114–115, 219 P. 2d 1080, 1084.

In light of the FELA and its legislative history it is difficult to regard any of these developments as other than the products of freewheeling. The FELA ". . . is founded on common-law concepts of negligence and injury, subject to such qualifications as Congress has

---

*R. Co.,* 353 U. S. 920; *Deen* v. *Gulf, Colorado & S. F. R. Co.,* 353 U. S. 925; *Thomson* v. *Texas & P. R. Co.,* 353 U. S. 926; *Ringhiser* v. *Chesapeake & O. R. Co.,* 354 U. S. 901; *McBride* v. *Toledo Terminal R. Co.,* 354 U. S. 517; *Gibson* v. *Thompson,* 355 U. S. 18; *Stinson* v. *Atlantic Coast Line R. Co.,* 355 U. S. 62; *Honeycutt* v. *Wabash R. Co.,* 355 U. S. 424; *Ferguson* v. *St. Louis-San Francisco R. Co.,* 356 U. S. 41; *Butler* v. *Whiteman,* 356 U. S. 271.

[2] Although the Court in footnote 2 of its opinion refers to the jury's special finding that Belt Railway was under the "control and supervision" of respondent, I do not understand that any reliance is placed upon that finding here. It seems enough to say that this finding was without support in the evidence, as the state appellate court held.

imported into those terms." *Urie* v. *Thompson,* 337 U. S. 163, 182. See also dissenting opinions in *Rogers* v. *Missouri Pacific R. Co., supra,* at 524, 538–539, 559, 563–564; and in *Kernan* v. *American Dredging Co., supra,* at 441, 451–452. The only such qualifications which Congress has yet seen fit to enact are those effected by §§ 3 and 4 of the Act, modifying or abolishing the common-law defenses of contributory negligence and assumption of risk. 35 Stat. 66, 45 U. S. C. § 53; 35 Stat. 66, as amended, 45 U. S. C. § 54. More particularly, when a well-known legal term like "agents" is used in legislation, it should be taken as carrying its ordinary meaning unless the statute indicates the contrary. Cf. *Hull* v. *Philadelphia & R. R. Co.,* 252 U. S. 475, 479. The principle of "accommodating scope" to which the Court resorts for justification of the expansive meaning now given that term is, as applied here, a new rule of statutory construction of which I have not been aware until today.

I must dissent.