**BOSTON & MAINE RAILROAD, Defendant, Third-Party Plaintiff, Appellant,**

v.

**Arlene M. HALL, Executrix, Plaintiff, Appellee (two cases).**

**STAUFFER CHEMICAL COMPANY, Third-Party Defendant, Appellant,**

v.

**BOSTON & MAINE RAILROAD et al., Appellees (two cases).**

**Nos. 5657-5660.**

United States Court of Appeals First Circuit.

Heard Oct. 5, 1960.

Decided Nov. 21, 1960.

Samuel P. Sears, Boston, Mass., for Stauffer Chemical Co.

Charles E. Holly, Boston, Mass., for Arlene M. Hall, Ex'x.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

On the morning of October 28, 1958, the plaintiff's testate, Hall, was a fireman on duty in the cab of a train operated by the defendant, Boston & Maine Railroad. He was killed when the train collided with a truck at a private grade crossing on the main line in Woburn, Massachusetts. This crossing was for the sole use of the third-party defendant, Stauffer Chemical Company, whose factory was on the opposite side of the track from a highway. By written agreement between Stauffer and the railroad the crossing gates were to be kept lowered at all times except when temporarily raised by Stauffer's employees to permit passage of vehicles. On the day in question Stauffer's gatekeeper, Forbes, possibly misled by a late blowing of Stauffer's 8 o'clock whistle, opened the gates and admitted a truck just before the train was due.[1] The air was foggy, impairing visibility. There was no automatic signal notifying Forbes that the train was coming, and he had no warning other than the timetable which, because of his mistake as to the time, was ineffective. The train arrived before the truck had completed its crossing. The then unavoidable collision killed Hall.

A finding by the jury that Forbes was negligent was unquestionably warranted on this evidence. Hall's executrix, however, did not sue Stauffer, but sued the railroad under the Federal Employ-

Lawrence R. Cohen, with whom James R. DeGiacomo, Boston, Mass., was on brief, for Boston & M. R. R.

[1]. Forbes testified that he opened the gates shortly after the whistle, which, according to him, made it no later than 8:02. The train was due at 8:06, and the engineer testified it was on schedule. In view of the fact that we find the railroad negligent in another particular it is not necessary to decide whether Forbes' recollection of how soon he acted after a whistle which "customarily" blew at a certain hour would warrant a jury in finding the train ahead of time, and hence possibly negligent. We will assume that it was on schedule. In the railroad's cross action against Stauffer, tried without jury, the court expressly so found.

ers' Liability Act, 45 U.S.C.A. § 51. Her first contention is that Forbes, although not an employee of the railroad, was its agent under the doctrine of Sinkler v. Missouri Pacific R. R., 1958, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799, so that his negligence was to be attributed to the railroad. The court charged the jury that it might so find. We do not believe it necessary to decide this matter in view of the plaintiff's second contention. This was that the railroad was itself negligent in not providing for an automatic signal which would warn Stauffer's gatekeeper of the arrival of trains. It was stipulated that such a signal could have been provided, and, of course, it is common knowledge that such signals exist at grade crossings maintained for the use of the public. The purpose in each instance must be precisely the same—to warn the gatekeeper of the approach of trains. While there may be a difference with respect to gates which are kept raised except when a train is to pass, and the reverse, nevertheless, the difference is one of degree. If it is desirable to advise the railroad's own employee at a public crossing, it seems difficult to say that in no case can there be need of advising a gatekeeper at a private crossing. It may be, as the railroad suggests, that some private crossings have no gates at all. However, each crossing must be regarded on its own special facts. This one was traversed by 30 to 100 trucks each day. The particular truck in question was 45 feet long, and grossed 30 tons. Some ten of this type crossed daily. Thirty trains pass daily. Although the track was straight for some distance, in the event of fog, as in this case, a train could not be seen until it was near the crossing. Hence there would be no visual warning.[2] We cannot rule as a matter of law that reliance upon an unprompted gate tender

was sufficient and that the jury's affirmative answer to a special question, whether "one of the causes of Hall's death [was] the negligent failure of the railroad to have electrical devices * * * at the Stauffer crossing," was unsupportable. Cf. Tiller v. Atlantic Coast Line R. R., 1943, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610. The railroad's motion for a directed verdict was properly denied.

We turn to the cross action of the railroad against Stauffer on its written contract of indemnity. This agreement stated in part, "[The crossing shall [not] be used * * * when any train is known to be due * * *. [Stauffer] will indemnify * * * [the] railroad * * * against any and all loss [or] * * * damage * * * and against any and all claims or suits for * * * death, by [Stauffer] or by any person authorized hereunder to pass and repass thereby or in any way attributable to the failure of [Stauffer] to perform this agreement or to the negligence of any crossing-tender in charge of said crossing and in its employ * * * when such claims or suits arise out of or are in any way referable to the existence or use of said crossing." Referring to this portion of the contract the court said, "This is a specific agreement between Stauffer and the railroad that no matter how many blameworthy causes of Hall's death may exist, if one of the causes is the negligence of Stauffer's crossing-tender then Stauffer will indemnify the railroad. There could hardly be drawn an indemnification agreement more clearly applicable to the case at bar." As a result the court ordered judgment against Stauffer in favor of the railroad for the amount of the judgment entered in favor of the original plaintiff on the verdict. Stauffer appeals.

2. The truck driver testified that visibility was only 20–25 feet. We would take judicial notice that this is incredible. However, the witness most favorable to the railroad said 900 feet. It was estimated that the truck was proceeding at 2 miles an hour. Since the truck was 45 feet long, and a train is about 8 feet wide, the truck would be in its path for about 18 seconds. The train was traveling 59 miles an hour. Consequently, the truck could readily have been struck by a train that was not visible when the truck entered the track area, for in 18 seconds the train would travel some 1500 feet.

■■ Stauffer contends at the outset that the indemnity agreement should be governed by the law of Massachusetts, and not by federal law. We will so assume as, if there is any difference, the Massachusetts law appears the more favorable to Stauffer. The Massachusetts court is one that denies contribution between joint tortfeasors. Old Colony St. Ry. Co. v. Brockton & Plymouth St. Ry., 1914, 218 Mass. 84, 88, 105 N.E. 866; Burke v. Hodge, 1912, 211 Mass. 156, 164, 97 N.E. 920. This principle appears to have colored its views with respect to indemnity agreements. See Churchill v. Holt, 1881, 131 Mass. 67. While such a provision is not against public policy, an agreement, as a matter of construction, will not be interpreted to provide for indemnification when the indemnitee's own negligence contributed to the loss "unless its express language requires it. Such an intent must unequivocally appear, and words of general import are not enough." Boston & Maine R. R. v. T. Stuart & Son Co., 1920, 236 Mass. 98, 104, 127 N.E. 532, 534. See Farrell v. Eastern Bridge & Structural Co., 1935, 291 Mass. 323, 197 N.E. 68.

■ We question whether this agreement unequivocally provided for indemnification no matter what negligence of the railroad contributed to the loss. We might doubt whether, for example, if the train had been ahead of schedule, and this had been found to be negligence contributing to Stauffer's improvident exercise of its easement, the agreement would have been operative. But that is not the question. The only fault we have determined by the railroad was the failure to maintain a warning signal.[3] A contract must be construed in the light of the circumstances under which it was made. Stauffer knew that the railroad was delegating responsibility to it in the circumstance of there being no signal, and accepted liability for negligence of its gatekeeper under those conditions. It cannot now say that the agreement is inapplicable to this loss because there was no signal, whether, as regards third parties, such absence was a fault or not. Any other construction would set the agreement at nought. The Massachusetts rule as to the scope of indemnity agreements is one of construction, not of law. It does not, in our opinion, override the primary rule of interpretation: "Every instrument in writing is to be interpreted, with a view to the material circumstances of the parties at the time of the execution, in the light of the pertinent facts within their knowledge and in such manner as to give effect to the main end designed to be accomplished. * * * [The] instrument is to be so construed as to give effect to the intent of the * * [parties] as manifested by the words used illumined by all the attendant factors, unless inconsistent with some positive rule of law or repugnant to other terms of the instrument. An omission to express an intention cannot be supplied by conjecture. But if the instrument as a whole produces a conviction that a particular result was fixedly desired although not expressed by formal

3. As we have previously stated, it was contended that under Sinkler v. Missouri Pacific R. R., 1958, 356 U.S. 326, 78 S. Ct. 758, 2 L.Ed.2d 799, Forbes was an "agent" of the railroad. Hence it has been suggested that the railroad, as principal, was jointly liable with Stauffer, and that the parties were joint tortfeasors in pari delicto. The use by a licensee of a private easement of crossing (the raising of gates otherwise closed and protecting the crossing seems merely an incident of such use) was not in furtherance of any railroad business, and appears far removed from the direct operational assistance the railroad received from the switcher in Sinkler. However, even if it be assumed that in some respect the railroad was responsible for Forbes, the Massachusetts court has not applied the doctrine of in pari delicto to all forms of dual liability. Cf. Old Colony R. R. Co. v. Slavens, 1889, 148 Mass. 363, 19 N.E. 372; Inhabitants of Lowell v. Boston & Lowell R. R., 1838, 23 Pick. 24. See Nickerson v. Wheeler, 1875, 118 Mass. 295, 298. And in any event, we think the reasoning hereafter expressed in the body of the opinion would apply equally to this claimed "agency" ground.

words, that defect may be supplied by implication and the underlying intention * * * may be effectuated, provided it is sufficiently declared by the entire instrument." Dittemore v. Dickey, 1924, 249 Mass. 95, 104–105, 144 N.E. 57, 60, quoted in Spaulding v. Morse, 1947, 322 Mass. 149, at pages 152–153, 76 N.E.2d 137.

Affirmed.