Michael **SHENKER**

v.

The **BALTIMORE AND OHIO RAILROAD COMPANY**, a Corporation, and The **Pittsburgh & Lake Erie Railroad Company**, a Corporation,

The **Baltimore and Ohio Railroad Company**, Appellant.

No. 13755.

United States Court of Appeals Third Circuit.

Argued Feb. 21, 1962.

Decided April 11, 1962.

Rehearing Denied June 1, 1962.

H. Fred Mercer, Pittsburgh, Pa. (Mercer & Buckley, Pittsburgh, Pa., on the brief), for appellant.

James A. Wright, Pittsburgh, Pa. (John Ruffalo, Youngstown, Ohio, on the brief), for appellee.

Before GOODRICH, KALODNER and GANEY, Circuit Judges.

GOODRICH, Circuit Judge.

The plaintiff recovered a judgment against the defendant, The Baltimore and Ohio Railroad (B&O), in a suit under the Federal Employers' Liability Act, 45 U. S.C.A. §§ 51–60. The incident which is the basis of the plaintiff's complaint took place in a railroad yard at New Castle, Pennsylvania, where the B&O and The Pittsburgh & Lake Erie Railroad Company (P&LE) have adjoining parallel tracks. Each railroad has its own waiting room in this railroad yard, but only the B&O maintains a ticket office. Tickets for P&LE passengers are sold at the B&O ticket window in the B&O station on the B&O side of these tracks. The plaintiff was a B&O employee whose duties included wheeling a loaded mail truck across the B&O tracks to the tracks of the P&LE, and loading the mail into a P&LE car. On the night in question plaintiff had brought his loaded truck to the door of the P&LE mail and baggage car. He claims that the door of this car stuck and that in endeavoring to force a large bag through the narrow opening of the car he wrenched his back and suffered the injuries complained of. Since the jury found in his favor his version of what happened must be taken to be accurate.

The court below was not completely happy with the verdict. See 196 F.Supp. 108 (W.D.Pa.1961). He said that he agreed "with the defendant that it is difficult to understand how the jury could find that the narrow opening caused by the defective door created an unreasonable risk of harm on which to predicate liability * * *." Nevertheless, being familiar with the decisions in this field, he did not interfere with the jury's verdict.

Our difficulty comes from one point which the court passed over rather lightly. He said:

"The employer's duty to inspect and to repair a defective appliance creating an unreasonably unsafe con-

dition cannot be delegated. In the case at bar, it was for the P. & L.E. to discharge that duty, and its negligence in failing to do so was the negligence of the plaintiff's employer, B. & O., as a matter of law."

Our trouble comes in seeing how the negligence of the P&LE, if any, in having a defective door, became attributable to the B&O as a matter of law. As the judge himself pointed out in addressing counsel during the trial of the case: "We have no contract in evidence. All we know is that the B&O Railroad was serving the P&LE trains by their baggage man." The car alleged to be defective belonged to P&LE. Nothing appears to show us that the B&O had any control whatever over the car or any employees of the P&LE. We do not know that the B&O became the agent of the P&LE, nor, indeed, as the trial court pointed out, anything more than that a B&O employee hauled the truck over to the P&LE tracks and put the bags in the car.

If the P&LE was the employer of the B&O in this kind of a transaction we do not see any basis for attributing the negligence of the employer to the employee who had no notice of the defect and who had no control over what its "principal" did. As is stated in comment *b* to section 350 of the Second Restatement of Agency:

"The knowledge of another agent or of the principal does not affect the liability of the agent. Thus, an agent who has no reason to know that the instrumentalities which he uses are not suitable for the work * * * is not liable for harm caused by reason of that fact."

The Supreme Court decision in Sinkler v. Missouri Pac. R.R. Co., 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958), is relied upon by the plaintiff. We think whatever impact that case has upon our situation tends to establish liability on the part of the P&LE and not the B&O.

The P&LE was initially joined in this suit. The judge dismissed the action against it on two grounds: (1) that no diversity of citizenship was shown; and (2) that there was no employee-employer relationship between the plaintiff, Shenker, and the P&LE.

To conclude: There was not the slightest evidence of any actual want of care to its employees on the part of the B&O; and, second, we see no basis whatever for attributing any negligence on the part of the P&LE to the plaintiff's employer.

The judgment of the district court will be reversed.

KALODNER, Circuit Judge (dissenting).

I would affirm the judgment of the District Court entered in favor of the plaintiff pursuant to the jury's verdict in his favor.

I agree with the District Court's holding, stated in its Opinion denying defendant's motion for judgment n. o. v., that "The evidence * * * was sufficient for the jury to find with reason that the defective door created an unreasonably unsafe condition for an employee whose duty was to swing heavy mail sacks from a cart into a mail car; that it was foreseeable that this condition might cause an injury to him; and that it was negligence to fail to eliminate the unsafe condition after notice thereof prior to the accident", and that "Furthermore, there was evidence from which the jury could find that the unsafe condition existed for a period sufficiently long that defendant, B. & O., had constructive notice thereof." 196 F.Supp. 108.

On this appeal defendant does not even contend that the trial judge in his charge to the jury failed to adequately instruct it with respect to the law relating to any of the aspects or elements of the negligence charged by plaintiff against defendant. The record discloses that not only did the defendant not except to the charge to the jury but that in response to the Court's question, addressed to trial counsel, "Gentlemen, have I misstated anything?" defendant's response was "No, Your Honor."

The majority premises its reversal of the District Court's denial of defendant's

motion for judgment n. o. v. on its view that "There was not the slightest evidence of any actual want of care to its employees on the part of the B&O; and, second, we see no basis whatever for attributing any negligence on the part of the P&LE to the plaintiff's employer."

The sum of the majority's position is that the evidence failed to establish that defendant breached a duty to plaintiff. I disagree.

The record discloses that the P&LE did not maintain any employees at its New Castle station;[1] defendant's employees serviced P&LE trains operating on its tracks which stopped at its station;[2] and plaintiff was assigned by defendant to load and unload P&LE mail and baggage cars. It was during a mail loading operation that plaintiff was injured by reason of a defective door of a P&LE mail car. Evidence was adduced that P&LE had been earlier advised that the door was defective.

These principles are well settled: It is the duty of a railroad to use reasonable care to furnish its employees with a safe place to work;[3] " * * * the standard of care must be commensurate to the dangers of the business;"[4] the fact that a railroad does not own, maintain or control the premises on which its employee is injured in the course of his employment does not relieve it of its legal duty to provide its employees with a safe place to work, nor does it absolve it from liability for injuries sustained by its employees because of unsafe condition of the premises.[5]

These instances of application of the principles stated are relevant here:

A railroad switchman was injured when the engine on which he was riding passed over a faulty section of track which broke causing him to be thrown to the ground. The track in question was neither owned nor maintained by the railroad which employed the switchman. The jury returned a verdict against the employing railroad. In affirming, the appellate court held that the absence of the elements of ownership or control of the premises on which the switchman was injured in the course of his employment did not relieve the employing railroad of its legal duty to provide him with a safe place to work; that "the duty the law imposed upon the railroad to inspect the tracks over which it moves its trains imputes to it constructive knowledge of the unsafe condition." Denver and Rio Grande Western Railroad Company v. Conley, 293 F.2d 612, 613 (10 Cir. 1961):

A railroad switchman was injured in the course of performing his duties when struck by a defective gate on the property of a packing company which the railroad served. A jury verdict in favor of the injured employee against the employing railroad was affirmed even though it did not own or control the premises where the accident occurred. Chicago Great Western Railway Company v. Casura, 234 F.2d 441, 447 (8 Cir. 1956):

A railroad switchman was injured when in the course of performing duties assigned to him by his railroad employer he slipped on oil or grease on the steel platform of a coal dumper owned and maintained by the United States Steel Corporation on its property. A jury verdict in favor of the injured switchman against the railroad was affirmed on the appellate court's holding that the railroad's "knowledge, actual or constructive, of the allegedly dangerous condition of the place where the accident occurred

1. Plaintiff's Interrogatory No. 17 and defendant's Answer thereto.

2. Paragraph 4, Stipulation at trial.

3. Bailey v. Central Vermont Ry., 319 U.S. 350, 352, 63 S.Ct. 1062, 87 L.Ed. 1444 (1943); Sano v. Pennsylvania Railroad Company, 282 F.2d 936, 937 (3 Cir. 1960).

4. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67, 63 S.Ct. 444, 87 L. Ed. 610 (1943).

5. Denver & Rio Grande Western Railroad Company v. Conley, 293 F.2d 612, 613 (10 Cir. 1961); Chicago Great Western Railway Company v. Casura, 234 F.2d 441, 447 (8 Cir. 1956); Beattie v. Elgin, Joliet & Eastern Railway Co., 217 F.2d 863, 865 (7 Cir. 1955).

was a question for the jury." Beattie v. Elgin, Joliet and Eastern Railway Co., 217 F.2d 863, 867 (7 Cir. 1955).

In the instant case the majority directed its attention to the status—agency or otherwise—which obtained or didn't obtain between defendant and P&LE relating to the servicing by defendant of P&LE's facilities, i. e. mail car.

In my opinion the question of the status referred to is academic. Assuming arguendo that defendant acted as a volunteer Good Samaritan in giving neighborly aid to P&LE in servicing its mail cars and not as a result of some contractual arrangement, the duties imposed by law on defendant to provide plaintiff a safe place to work would not be affected, one way or the other.

Principles of agency adverted to by the majority play no role nor do they have any impact in the situation here. Plaintiff's action against defendant is premised solely on an employer-employee relationship and a breach of the duty imposed by that relationship and not on any principal-agent status.

Assuming arguendo, as the majority did, that there existed a principal-agent relationship between P&LE and defendant, the impact of the agency principles pertaining to such relationship on plaintiff's case would be subject to the teaching of the Supreme Court that "Plainly an accommodating scope must be given to the word 'agents' to give vitality to the standard governing the liability of carriers to their workers injured on the job." Sinkler v. Missouri Pacific Railroad Co., 356 U.S. 326, 330, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958). In Sinkler a railroad employee's injury was caused in whole or in part by the fault of an independent contractor performing operational activities of the carrier. It was nevertheless held that the independent contractor was an "agent" of the railroad within the meaning of the FELA.

In Sinkler the Supreme Court further said (p. 329, 78 S.Ct. p. 762):

"However, in interpreting the FELA, we need not depend upon common-law principles of liability. This statute, an avowed departure from the rules of the common law, cf. Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 507–509 [77 S.Ct. 443, 1 L. Ed.2d 493], was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety. Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54 [63 S.Ct. 444, 87 L.Ed. 610]. The cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier. Kernan v. American Dredging Co., 355 U.S. 426, 431, 438 [78 S.Ct. 394, 2 L.Ed. 2d 382]."

Finally, the majority's reversal of the District Court's denial of defendant's motion for judgment n. o. v. requires reference to the holding in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 63 S.Ct. 444, (1957) that:

"Under this statute [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. * * * Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that the negligence of the employer played any part at all in the injury or death." [6]

For the reasons stated I would affirm.

Rehearing denied: BIGGS, KALODNER, STALEY and SMITH, JJ., dissented

---

6. Zegan v. Central Railroad Co. of New Jersey, 266 F.2d 101, 102, 77 A.L.R.2d 768 (3 Cir. 1959).