736 F.2d 1250
 SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, U.S. District
Council of Railroads, A Corporation,
Appellant/Cross-Appellee,
v.
BURLINGTON NORTHERN RAILROAD COMPANY, A Corporation,
Appellee/Cross-Appellant.
 Nos. 83-2623NE, 83-2645NE.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 17, 1984.
Decided June 22, 1984.
 
 Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Neb., for appellee/cross-appellant.
 Friedman Law Offices, Lincoln, Neb., for appellant/cross-appellee.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and FAGG, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 The Sheetmetal Workers International Association, the union representing the sheetmetal workers employed by defendant Burlington Northern ("BN"), brought this action under 45 U.S.C. Sec. 60 (FELA), seeking to enjoin BN from continuing its alleged policy and practice of intimidating and discouraging its employees from seeking legal counsel for possible FELA personal injury suits. Section 60 of Title 45 provides:
 
 
 2
 Any contract, rule, regulation or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to any person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment."
 
 
 3
 (Emphasis added).
 
 
 4
 At close of the union's case, the court dismissed the suit pursuant to F.R.Civ.P. 41(b). The court determined that although an unretained attorney was "a person in interest" under Sec. 60, the union had failed to make out a prima facie case that BN had a policy or practice of intimidating or discouraging workers from seeking counsel. We affirm.
 
 I. "Person in Interest" under Sec. 60
 
 5
 BN claims the court erred as a matter of law in concluding that an unretained attorney was a "person of interest" to whom accident information could be provided under Sec. 60. According to BN, a "person in interest" only includes employees with first hand knowledge of the accident, the injured employee's dependants and his duly authorized representatives. Considering the legislative language, purpose, and history, we conclude that a "person in interest" includes not only retained attorneys but also those unretained attorneys whom the injured employee seeks to consult for the purpose of possible retention in an FELA suit.
 
 
 6
 Section 60 should be interpreted in the context of the broad remedial purpose behind the Federal Employers' Liability Act (45 U.S.C. Sec. 51 et seq.) The FELA makes an employer liable in damages for injuries negligently inflicted in whole or in part on its employees by its "officers, agents, or employees." 45 U.S.C. Sec. 51; Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 507-08, 77 S.Ct. 443, 448-449, 1 L.Ed.2d 493 (1957); Hopson v. Texaco, 383 U.S. 262, 263, 86 S.Ct. 765, 766, 15 L.Ed.2d 740 (1966) (per curiam). By giving the negligently injured employee this legal remedy, Congress sought "to achieve the broad purpose of promoting 'the welfare of both employer and employee, by adjusting the losses and injuries from industry and commerce to the strength of those who in the nature of the case ought to share the burden.' " Sinkler v. Missouri Pacific R. Co., 356 U.S. 326, 329-30, 78 S.Ct. 758, 761, 2 L.Ed.2d 799 (1958), quoting S.Rep. No. 460, 60th Cong., 1st Sess. 3. As the Supreme Court emphasized in Sinkler, 356 U.S. at 329, 78 S.Ct. at 761-62:
 
 
 7
 [the FELA] was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety .... The cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust the expense equitably between the worker and the carrier.
 
 
 8
 See also Hopson v. Texaco, 383 U.S. 262, 263-64, 86 S.Ct. 765, 766, 15 L.Ed.2d 740 (1966) (per curiam); Wilkerson v. McCarthy, 336 U.S. 53, 68-69, 69 S.Ct. 413, 420-21, 93 L.Ed. 497 (1949). (Douglas, J. concurring)
 
 
 9
 To assure the adequacy of FELA's legal remedy, Congress believed it was necessary to equalize the access to accident information available to highly efficient claims departments and to individual FELA claimants. Senate Report No. 661, 76th Cong. 1st Sess. 2, 5 (1939); see also Stark v. Burlington Northern, Inc., 538 F.Supp. 1061, 1062 (D.C.Col.1982). Accordingly, Sec. 60 was designed to prohibit the enforcement of company rules inhibiting the free flow of accident information and "permit those who have information concerning the facts and circumstances of a personal injury to give statements to the injured employee or his dependants, or to someone authorized to represent him or them." Senate Report No. 611 at 5.
 
 
 10
 It is thus undisputed that an attorney retained by an injured worker for the purpose of pursuing an FELA claim is a "person of interest" to whom accident information may be properly passed.[1] We can discern no logical basis for distinguishing between an injured employee's communication with an attorney he has retained and his communication with an attorney he consults for the purpose of possible retention. It is well understood that in many cases an injured worker is unable to determine whether an attorney is even willing to take his FELA case without first conveying information regarding the facts and circumstances of the injury. To interpret Sec. 60 to exclude such information flow would effectively thwart the FELA's broad remedial purposes of providing an effective legal remedy for negligence related injuries.
 
 
 11
 We are cognizant of Congress' concern that Sec. 60 not be interpreted to foster or condone "ambulance chasing". See supra note 1. However, this is not a case where unretained attorneys have attempted to seek out and question railroad employees about possible accidents for the purpose of landing a lucrative FELA case. Rather, this suit was brought by the union on behalf of injured workers seeking to consult and possibly retain attorneys for FELA suits. As such, no ambulance chasing problem is posed here.
 
 II. Policy or Practice of Intimidation
 
 12
 We do not believe the court erred in finding that the union had failed to establish a prima facie case that BN had a policy and practice of intimidating or discouraging employees from retaining legal counsel. The union's attempt to establish its Sec. 60 policy and practice claim focused on three exhibits and the testimony of four injured workers and two BN claims representatives. The three exhibits were: a "BN News" article entitled, "On the Job Injury? General Claims Can Help;" an article appearing in the Denver Regional News; and a BN informational pamphlet entitled, "Injured on the Job." The BN News and Denver Regional News articles portrayed the BN claims representative as "a friend of the worker" and characterized the BN's internal claims settlement procedure as an efficient and amicable alternative to worker FELA suits. The BN informational pamphlet, while stating that, "employees are free to hire an attorney at any time," encouraged workers to "first try to resolve your case with the claims representative, saving both you and the company legal fees, long delays, and emotional turmoil that result from a lawsuit."
 
 
 13
 There was nothing coercive or threatening about these articles and pamphlet; they simply suggested that the claims settlement process was a desirable alternative to an FELA suit. Federal cases interpreting Sec. 60 have recognized that some form of coercion or threat is required to establish a violation. Hendley v. Central of Georgia R. Co., 609 F.2d 1146, 1150-51 (5th Cir.1980), cert. denied, 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981); Stark v. Burlington Northern, 538 F.Supp. 1061, 1062 (D.C.Col.1982).
 
 
 14
 To interpret Sec. 60 to prohibit the non-coercive materials here would probably run afoul of the First Amendment. We are guided by cases interpreting provisions in the National Labor Relations Act. See Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co., 394 U.S. 369, 383, 89 S.Ct. 1109, 1117, 22 L.Ed.2d 344 (1969) (NLRA and cases interpreting it provide guidance in interpreting provisions of Railway Labor Act); Hendley, 609 F.2d at 1151 (45 U.S.C. Sec. 60 interpreted in the light of cases interpreting Railway Labor Act's prohibition against coercion to influence an employee's free choice). In NLRB v. Virginia Electric & Power Co., 314 U.S. 469, 477, 62 S.Ct. 344, 348, 86 L.Ed. 348 (1941), the Supreme court concluded that the Wagner Act could not be interpreted to prohibit an employer from exercising his First Amendment right to express his views to employees on the merits of unionization, provided the expression was neither coercive nor part of a coercive course of conduct. See also NLRB v. Golub Corp., 388 F.2d 921, 926 (2nd Cir.1967) (tracing case law background--including Virginia Electric --to the enactment of Sec. 8(c) of the Taft-Hartley Act (1947)). In NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Supreme Court referred to the relationship between the First Amendment and Sec. 8(c) of the NLRA, which was enacted in 1947:
 
 
 15
 [A]n employer's free speech right to communicate his views to his employees is firmly established and cannot be infringed by a union or the Board. Thus Sec. 8(c) (29 U.S.C. Sec. 158(c)) merely implements the First Amendment by requiring the expression of "any views, argument, or opinion" shall not be "evidence of an unfair labor practice", so long as such expression contains "no threat of reprisal or force or promise of benefit" in violation of Sec. 8(a)(1).
 
 
 16
 Id. at 617, 89 S.Ct. at 1941; see also NLRB v. Intertherm, Inc., 596 F.2d 267, 277 (8th Cir.1979).
 
 
 17
 The pamphlet and articles here fell squarely within the ambit of free speech protections guaranteed by the First Amendment, as elucidated in Virginia Electric and Gissel. The materials, considered collectively, could not have been intended or understood as a threat to employees seeking to retain an attorney. Compare Gissel, 395 U.S. at 619, 89 S.Ct. at 1942. In fact, the pamphlet clearly stated that the employees were "free to hire an attorney at any time."
 
 
 18
 Furthermore, the materials were not part of a course of conduct or policy and practice of intimidating or threatening employees seeking to retain attorneys. As the district court found, the testimony of four injured employees established that two or three claims representatives had either urged the discharge of a retained attorney or advised that the retention of an attorney could jeopardize job security, promotions, or cash advances. We, like the district court, find such statements by claims representatives to be disturbing and reprehensible. Even so, we agree with the district court that the statements were isolated, sporadic, and were made by a relatively small number of claims representatives; they did not reflect any BN policy or practice of coercion or intimidation, which is what the union has alleged in this claim for injunctive relief. In Teamsters v. United States, 431 U.S. 324, 336, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977), the Supreme Court recognized that a plaintiff raising a policy or practice claim under Title VII must "prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts. It had to establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure--the regular rather than the unusual practice." Applying this common sense definition, we agree with the district court's finding that the union failed to establish that BN had a policy or practice of coercing or threatening employees seeking to retain counsel for FELA suits.[2]
 
 
 19
 Judgment affirmed.
 
 
 
 [1]
 In addition to Senate Report No. 661, infra, see Amending the Employer's Liability Act: Hearings on S. 3398 Before the Subcommittee of the Committee of the Juriciary, 75th Cong., 3d Sess. 25 (1938). Amending the Federal Employer's Liability Act: Hearings on Sec. 1708 Before the Subcommittee of the Committee of the Judiciary, 76th Cong., 1st Sess. 20, 23-24 (1939)
 
 
 [2]
 On this appeal, BN has also challenged the union's standing to sue on behalf of its members under 45 U.S.C. Sec. 60. We agree with the district court's well reasoned memorandum and order (filed October 24, 1983) which concluded that the union had met the requirements for associational standing to assert a claim for injunction relief on behalf of its members. See Hunt v. Washington Apple Advertising Commission, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); Associated General Contractors v. Otter Trail Power Co., 611 F.2d 684, 690 (8th Cir.1979)