[No. 5300-8-III.   Division Three.   July 17, 1984.]

GLORIA SEHLIN, *as Administratrix, Appellant,* v. CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, ET AL, *Respondents.*

*Owen A. Johnson* (*Charles A. Collins, Donald L. Rudquist, Michael L. Weiner,* and *DeParcq, Perl, Hunegs, Rudquist & Koenig, P.A.,* of counsel), for appellant.

*Arthur W. Waters, James E. Nelson, John A. Hackett, K. C. Webster,* and *Hackett, Beecher, Hart, Branom, Vavrichek & Drury,* for respondents.

THOMPSON, J.—This is a wrongful death action brought under the Federal Employers' Liability Act, 45 U.S.C. § 51 (FELA) and Washington law.

Edward Sehlin, at the time of his death, was a member of a work crew attempting to rerail a freight car. The Chicago, Milwaukee, St. Paul and Pacific Railroad Company (Milwaukee Road or Railroad), Mr. Sehlin's employer, had rented a D-8 Caterpillar bulldozer (Cat) from Cresto and Lanphere, Inc. (Cresto). Cresto also provided and paid the wages of an operator, Mr. Burchak. Milwaukee Road had hired machinery from Cresto before.

At the work site the railroad tracks ran in an east–west direction. The derailed car was parallel to and north of the railroad tracks and at the base of an embankment. There was a train–mounted derrick to the southwest and a mobile crane directly west of the car. The Cat was to the east of

the car. A power pole carrying high voltage lines was east of the Cat and a bit to the north.

Mr. Sehlin was the Cat operator's ground man, relaying hand signals from Roy Carlyon, the site foreman. The crew was attempting to move the derailed car west along the base of the embankment to a point where the embankment was lower. The crew had managed to move the car a short distance by pulling with the derrick and pushing with the Cat. Carlyon wanted the car moved closer to the embankment. Burchak tried pushing on the northwest corner, without success, so it was decided he would move north of the car and push directly south. Mr. Sehlin understood this, but was not told how Burchak planned to move the Cat to the new position.

Mr. Burchak first made several passes to push dirt to his planned position so his Cat would have better footing. During this time, Mr. Sehlin stood near the southeast corner of the derailed car in a place of relative safety. After the area was filled, Burchak backed his Cat to a point where he was sitting approximately even with the power pole. Burchak planned to pivot his Cat and back into position. He put the Cat in forward gear, braked the left track and began pivoting counterclockwise, watching over his shoulder to see that his rippers cleared the power pole. After the rippers cleared, he looked forward in time to see Mr. Sehlin's boots. Mr. Sehlin, having moved easterly from his place by the car toward the Cat, was struck by the blade and died from his injuries.

This action was commenced against Milwaukee Road under FELA. Cresto was joined under products liability and other theories. (Milwaukee Road and Cresto claimed indemnity from each other, but these claims were to be tried separately and are not part of this appeal.) At the close of plaintiff's case, the products liability claims were dismissed. Later, Cresto's motion for directed verdict on the loaned servant doctrine was also granted. The jury returned a special verdict on the remaining claims, finding the Milwaukee Road was not negligent and that Mr. Sehlin

was 100 percent contributorially negligent. Motions for a new trial or a judgment notwithstanding the verdict were denied. Mrs. Sehlin appealed. We affirm.

■ First, Mrs. Sehlin contends the court erroneously refused to give plaintiff's proposed instruction that the decedent was presumed to exercise due care. Mrs. Sehlin correctly contends that under FELA, where there is no evidence as to what a deceased employee was doing immediately before an accident, there is a presumption the employee was exercising due care for his own safety. *Tennant v. Peoria & P.U. Ry.*, 321 U.S. 29, 88 L. Ed. 520, 64 S. Ct. 409 (1944); *see also Sunderland v. Pittsburgh & L.E. R.R.*, 319 F.2d 809 (3d Cir. 1963); 25A C.J.S. *Death* § 80(2) (1966). Here, however, there was evidence presented as to decedent's actions just prior to the accident. Roy Carlyon, the Railroad's foreman, testified he saw the decedent run from a position of safety toward the turning Cat. Mrs. Sehlin contends this evidence is inadequate because Mr. Carlyon was an interested witness and lacked credibility. Assuming the witness was interested and lacked credibility, her argument lacks merit. None of the FELA cases cited by Mrs. Sehlin require evidence from a disinterested witness; they all turn on the lack of any evidence of the decedent's acts. Since there was evidence of the decedent's acts prior to the accident, the court did not err in refusing the proposed instruction.

■ Next, Mrs. Sehlin contends the court erred when it refused to give an instruction concerning the sudden emergency and rescue doctrines. Plaintiff's proposed instruction 27 provides:

I charge you that when a person is confronted with an emergency through no fault of his own, he is not to be held contributorily [*sic*] negligent because he did not choose the safest course of conduct in the circumstances. In judging his conduct, the jury should consider the circumstances of the emergency, the time available to the actor to act and all other factors bearing on his conduct.

Also, where one is faced with the perceived necessity to act, to rescue or save another from imminent peril

through no fault of the actor, he is not contributorily [*sic*] negligent if in the attempted rescue he does not choose the safest or the most reasonable course of conduct or exposes himself to danger in so doing, unless it can be said that such act was so unreasonable that a reasonable person faced with the same circumstances would not have proceeded in the manner of the actor involved.

We disagree with defendants' contention that the instruction is defective because it erroneously assumes an emergency exists. *Cf.* WPI 12.02. However, the instruction, as proposed, does not correctly state the law. The first paragraph concerning emergency does not include a reasonably careful person standard. *See* WPI 12.02. The second paragraph concerning rescue does not require that the existence of imminent peril be determined by a reasonably prudent person. *See Maltman v. Sauer*, 84 Wn.2d 975, 977, 530 P.2d 254 (1975). We find the trial court properly refused this instruction because it erroneously stated the law. *See Crossen v. Skagit Cy.*, 100 Wn.2d 355, 669 P.2d 1244 (1983).

Mrs. Sehlin's third assignment of error concerns the dismissal of all claims against Cresto. There are three major areas of contention.

First, Mrs. Sehlin claims the court erroneously dismissed all products liability claims which were based on the absence of certain safety equipment on the Cat. We find the products claims were properly dismissed for lack of proof. Although Mrs. Sehlin presented testimony the Cat did not have a horn, backup signals, or rearview mirrors, there was no proof the absence of this equipment was a proximate cause of the accident.

Second, Mrs. Sehlin claims the court erroneously dismissed Cresto on the borrowed servant doctrine. The court ruled the Cat operator was the Railroad's servant under *Sinkler v. Missouri Pac. R.R.*, 356 U.S. 326, 2 L. Ed. 2d 799, 78 S. Ct. 758 (1958), and dismissed plaintiff's claim against Cresto. Assuming only for argument's sake this was error, it was harmless. The jury, instructed that Burchak was Milwaukee Road's agent, found Milwaukee, its employees and

agents were not negligent. Thus, the jury, having found Mr. Burchak was not negligent, by that finding likewise absolved both possible masters under the doctrine of respondeat superior.

Finally, Mrs. Sehlin contends her claim that Cresto was directly negligent in failing to provide adequate safety training to its operators should not have been dismissed. This claim was not included in the pleadings nor was it argued at the time of dismissal. It will not be considered for · the first time on appeal. *Buchsieb/Danard, Inc. v. Skagit Cy.*, 99 Wn.2d 577, 663 P.2d 487 (1983); RAP 2.5(a).

The next major area of alleged error is the exclusion of evidence of certain standards of the Occupational Safety and Health Act of 1970 and the Washington Industrial Safety and Health Act of 1973, RCW 49.17.

Mrs. Sehlin argues the court erroneously excluded evidence of WAC 296–24–23029(6), which provides: "The driver shall be required to look in the direction of, and keep a clear view of the path of travel." *See also* Occupational Safety and Health Standards, 29 C.F.R. § 1910.178(n)(6) (1983).[1] Her argument is without merit because the trial court did not exclude this regulation; the court only excluded *construction* regulations, found at WAC 296–155. Contrary to Mrs. Sehlin's assertion, the court's ruling was not ambiguous. Since the court did not exclude the evidence, there is no basis to claim error.

Mrs. Sehlin also contends the court should have given an instruction on WAC 296–24–23029, but we decline to address this issue since she failed to set out her proposed instruction in her brief. *See Thomas v. French*, 99 Wn.2d 95, 659 P.2d 1097 (1983).

Next, Mrs. Sehlin suggests the court erred in refusing to

---

[1] We assume for argument the regulations apply to this case. WAC 296–24–23003(1) excludes vehicles intended primarily for earth moving. However, it is unclear whether the exclusion applies only to the rules in section 23003 or to all rules in the 230 group. If one looks to the nearly identically worded C.F.R., it is clear the equivalent to section 23029(6) would not apply because the C.F.R. has another numbering system. *See* 29 C.F.R. § 1910.178.

allow into evidence WAC 296–155–615(1)(i)(i) and (ii):

(i) Audible alarms. (i) All bidirectional machines, such as rollers, compacters, front–end loaders, bulldozers, and similar equipment, shall be equipped with a horn, distinguishable from the surrounding noise level, which shall be operated as needed when the machine is moving in either direction. The horn shall be maintained in an operative condition.

(ii) No employer shall permit earthmoving or compacting equipment which has an obstructed view to the rear to be used in reverse gear unless the equipment has in operation a reverse signal alarm distinguishable from the surrounding noise level or an employee signals that it is safe to do so.

*See* Safety and Health Regulations for Construction, 29 C.F.R. § 1926.602(a)(9)(i), (ii) (1983). These regulations are found in sections entitled "Construction Regulations". Under the Occupational Safety and Health Act of 1970, the construction regulations for federal contracts found at 29 C.F.R. § 1926 were adopted for all construction work. 29 C.F.R. § 1910.12(a). These in turn were adopted by the Federal Railroad Administration to apply to railroad construction work. Department of Transportation, FRA, *Railroad Occupational Safety & Health Standards; Termination,* 43 Fed. Reg. 10,583 (1978) (policy statement). The C.F.R. defines construction as work for construction, alteration and/or repair, including painting and decorating. 29 C.F.R. § 1910.12(b). The WAC contains further definitions.

(5) "Construction work" shall mean and include all or any part of excavation, construction, erection, alteration, repair, demolition, and dismantling, of buildings and other structures and all operations in connection therewith; the excavation, construction, alteration and repair of sewers, trenches, caissons, conduits, pipe lines, roads and all operations pertaining thereto; the moving of buildings and other structures, and to the construction, alteration, repair, or removal of wharfs, docks, bridges, culverts, trestles, piers, abutments or any other construction, alteration, repair or removal work related thereto.

. . .

(18) "Repair" means to restore a building, machine, roadway, etc., to an original state after damage or decay.

WAC 296–155–012(5), (18). The trial court ruled rerailing railroad cars was not construction. Even under the broad definitions set out above, we agree. There is no evidence these cars were being rerailed pursuant to construction, repair or alteration. Although they may have been using construction equipment, the crew was simply not in the process of constructing anything. The regulations do not apply.

Even if it is assumed the regulations do apply, we do not see how violation of WAC 296–155–615(1)(i)(ii) could be a proximate cause of this accident. The evidence established the Cat was in forward gear at the time of the accident. Presumably, the reverse signal would not sound in forward gear. Furthermore, there is no evidence a reasonable operator would have sounded a horn had there been one. The court's exclusion of these rules did not prohibit the plaintiff from presenting evidence of reasonable practice. Thus, again it appears there was no evidence of proximate cause.

Mrs. Sehlin contends the trial court erroneously excluded evidence of Milwaukee Road's safety rule 160, which provides:

> Operators of power–propelled equipment must look in the direction of movement and proceed at a safe speed governed by existing conditions.

The court excluded rule 160 during testimony by Mr. Burchak, apparently concluding the rules did not apply to him. However, *after* Mr. Burchak testified, the court ruled it would allow counsel to read the rule during cross examination of Roy Carlyon. But Mrs. Sehlin, having failed to avail herself of this opportunity, may not now claim this was error.

Next, Mrs. Sehlin contends the court erred in refusing to allow a railroad employee to testify as an expert. Historically, railroad workers are given an "expert" status concerning railroad operations. *See* DeParcq, *Litigation Under the Federal Employers' Liability Act*, 11 Am. Jur.

Trials 397, § 74, at 521 (1966). However, the witness must still be qualified to testify to the proper operations. 32 C.J.S. *Evidence* § 546(11) (1964). Mrs. Sehlin made no effort to lay sufficient foundation to qualify her witness as an expert on the proper methods of rerailing railroad cars. The court did not abuse its discretion by denying automatic expert status to plaintiff's witness. *See Duchsherer v. Northern Pac. Ry.,* 4 Wn. App. 291, 481 P.2d 929 (1971).

Mrs. Sehlin also suggests the court erred in limiting testimony concerning a defective air brake on the derrick and the failure of the Railroad to provide a safe place to work. After plaintiff's witness testified it was not necessary to use a Cat to rerail this car, further evidence of unsafe working conditions was excluded. The court stated plaintiff had enough evidence. The court also ruled evidence of the defective air brake was too remote. Mrs. Sehlin contends this evidence was not too remote since cause in a FELA action differs from proximate cause. The test is whether the employer's negligence played any part, even the slightest, in producing the injury or death for which damages are sought. *Rogers v. Missouri Pac. R.R.,* 352 U.S. 500, 1 L. Ed. 2d 493, 77 S. Ct. 443 (1957). Thus, she argues the excluded evidence was admissible as a remote cause of the accident.

■ Rulings on the admissibility of evidence are normally left to the court's discretion in FELA actions. *Lavender v. Kurn,* 327 U.S. 645, 90 L. Ed. 916, 66 S. Ct. 740 (1946). The court did not abuse its discretion.

With regard to unsafe working conditions, Mrs. Sehlin was able to present evidence concerning each aspect of her offer of proof including (1) the use of the Cat was unnecessary, (2) the close quarters of the working area, (3) the existence of a dangerous power line, and (4) the best method to rerail was to use two cranes. Limiting further testimony was not an abuse of discretion. *See* ER 403 (cumulative evidence).

We agree the evidence regarding the defective air brake was too remote. Mrs. Sehlin's offer of proof was only that the crane could not do everything it should have. She failed

to explain how this in any way affected the crane's ability to rerail cars. Absent a more specific offer of proof, the court did not abuse its discretion.

Finally, Mrs. Sehlin contends the court should have granted a judgment n.o.v. or a new trial because the verdict was contrary to the evidence. She points to evidence of the difficult working conditions, Mr. Burchak's lack of training by and experience with the Railroad, Mr. Burchak's failure to tell Mr. Sehlin how he was going to move, and Mr. Burchak's failure to look where the blade was going. Mrs. Sehlin stresses this is a FELA action with a different causal standard and with comparative negligence. As a FELA action, the determination of sufficiency of the evidence is to be judged under the federal standard. *See Brady v. Southern Ry.*, 320 U.S. 476, 88 L. Ed. 239, 64 S. Ct. 232 (1943) (must use federal law to determine if there is sufficient evidence to submit the case to the jury). *See also* DeParcq, 11 Am. Jur. Trials, § 93, at 545; *Adair v. Northern Pac. Ry.*, 64 Wn.2d 539, 392 P.2d 830 (1964). Under the federal cases, jury verdicts are rarely disturbed. *See Lavender v. Kurn, supra; Rogers v. Missouri Pac. R.R., supra.* As was said in *Tennant v. Peoria & P.U. Ry.*, 321 U.S. 29, 35, 88 L. Ed. 520, 525, 64 S. Ct. 409 (1944):

> It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact–finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclu-

sions or because judges feel that other results are more reasonable.

(Citations omitted.)

We find the jury verdict was supported by the evidence. Thus, the trial court did not err in denying a new trial or a judgment notwithstanding the verdict.

The judgment is affirmed.

MUNSON, C.J., and MCINTURFF, J., concur.

Review denied by Supreme Court October 19, 1984.