**In the Matter of James N. TINSLEY.**

**Bankruptcy No. 75–83–Ath.**

United States District Court,
M. D. Georgia,
Athens Division.

Oct. 29, 1976.

John S. Noell, Jr., Edward D. Tolley, Cook, Noell, Bates & Warnes, Athens, Ga., for appellants.

Richard M. Nichols, Macon, Ga., for appellee.

OWENS, District Judge:

The question in this bankruptcy appeal is whether under Georgia law a creditor who records an execution on his superior court judgment against the bankrupt after it is affirmed on appeal acquires a lien as of the date of the trial court judgment or as of the date of its filing for recording. The problem arises because section 67(a)(1) [1] of the Bankruptcy Act makes "null and void every lien . . . obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition" initiating bankruptcy proceedings if the bankrupt was insolvent when the lien was obtained or if the lien was obtained in fraud of the Bankruptcy Act. In the present case, appellants Beeler and Roush obtained a superior court judgment on May 30, 1974, well over a year prior to the bankrupt's voluntary petition; however, the judgment was appealed, and execution was not issued and entry of execution made on the General Execution Docket, until April 9, 1975, the day after the judgment was affirmed on appeal—less than two months before the bankruptcy petition was filed on June 5, 1975.

The bankruptcy judge ruled:

"The judgment lien of John A. Roush and Glover G. Beeler, Jr. was perfected on April 9, 1975, within four (4) months of the filing by the bankrupt of a petition initiating a proceeding under the Bankruptcy Act, and such lien is null and void as against the property of . . . the bankrupt."

Appellants argue that the bankruptcy judge erred in voiding their lien because it dates from the entry of their original judgment and, in any event, because no finding was made that the bankrupt was insolvent or that the lien was fraudulently obtained.

Under section 67a, state law determines when, how, and on what a judgment becomes a lien. See 4 *Collier on Bankruptcy*, ¶ 67.08. At least since the first codification of the statutes in 1861,[2] Georgia law has provided that a creditor acquires a lien against a defendant as soon as he obtains a judgment:

"All judgments obtained in the superior, justices', or other courts of this State shall be of equal dignity, and shall bind all the property of the defendant, both real and personal, from the date of such

---

1. 11 U.S.C.A. § 107(a)(1).

2. Georgia's first code was compiled in 1861 by R. H. Clark, T. R. R. Cobb, and D. Irwin, but did not become effective until January 1, 1863. R. H. Clark, T. R. R. Cobb, D. Irwin, *The Code of the State of Georgia* (John H. Seals, Publisher, 1861) at x.

judgment, except as otherwise provided in this Code." Ga.Code Ann. § 110–507. (1863 Ga.Code § 3499).

With respect to the effect of an appeal from such a judgment, the statutes provide that the judgment is suspended upon the entering of an appeal, Ga.Code Ann. § 110–303 (1863 Ga.Code § 3488), but that such suspension is not to affect the creditor's rights:

"A judgment in the superior court, which is taken to the Supreme Court or Court of Appeals and affirmed, loses no lien or priority by the proceeding in the appellate court, but takes effect from the first judgment." Ga.Code Ann. § 110–506 (1863 Ga.Code § 3498).

In dealing with similar provisions providing for the suspension of a justices' court judgment pending appeal to a superior court, the Supreme Court of Georgia held in *Watkins v. Angier*, 99 Ga. 519, 27 S.E. 718 (1896), that the lien of an affirmed judgment "by relation attached to the property of the defendant as of the date appealed from, and was, therefore, superior in point of dignity to a judgment rendered in the superior court" subsequent to the trial court judgment but prior to its affirmance. *Id.* at 523, 27 S.E. at 720.

The *Watkins v. Angier* court did not consider an 1889 law providing for the entry of judgment executions on the General Execution Docket. [1889] Ga.Laws 106, *codified at* 1895 Ga.Code §§ 2778–85; 1910 Ga.Code §§ 3320–26; Ga.Code Ann. §§ 67–2501, 67–2503, 39–701 to 39–707. As now applicable, the law provides:

". . . [A]s against the interest of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the defendant's property, no money judgment obtained within the county of defendant's residence, in any court of this State, whether superior court, probate court, county court, city court, or justice court, or United States court in this State, municipal court or other courts, shall have a lien upon the property of the defendant, un-

less the execution issuing thereon shall be entered upon [the general execution docket]. Ga.Code Ann. § 39–701.

Under this statute, it would seem that the creditors' lien becomes effective only upon the entry of execution on the general execution docket. Case law, however, requires an opposite conclusion.

Construing this statute in 1896, the Supreme Court of Georgia in *Griffith v. Posey*, 98 Ga. 475, 25 S.E. 515 (1896) concluded that the statute protected only persons who acquired a contractual lien subsequent to a judgment and held that an older, unrecorded judgment would prevail over a later judgment which had been recorded. The court flatly stated that "the act in question has no application to contests between ordinary common law judgments." *Id.* at 476, 25 S.E. at 515. Thus, except where subsequent bona fide purchasers are concerned, the 1889 recording statute left intact the principle that a common law judgment is a lien upon rendition of judgment.

The statute was further considered in *Crosby v. King Hardware Co.*, 109 Ga. 452, 34 S.E. 606 (1899). At that time the statute provided that the lien of a judgment would date from entry of execution on the general execution docket unless it was entered within ten days of judgment; if entered within ten days, it would be effective from the date of judgment. In *Crosby*, King Hardware obtained a judgment against one Dunn on June 29, 1896 in the county court which was appealed to the superior court. On November 11, 1896, Dunn conveyed property to Crosby. After its judgment was affirmed by the superior court on March 5, 1897, King Hardware sought to levy on the property conveyed to Crosby. In deciding the controversy between the judgment creditor and the purchaser, the court began by observing that the appeal had been filed before the expiration of the ten day period for execution to be entered on the general execution docket and that, because the appeal operated as a supersedeas, the ability of King Hardware to obtain

and file execution on its judgment was eliminated when the appeal was filed. Reasoning that "no loss must be allowed to fall upon the plaintiff in execution simply because he failed to do what he might have done but what he was under no legal obligation to do," the court held that the lien dated from the rendition of the original county court judgment:

"The judgment of the county court is a lien upon the property of the defendant, and this lien is not discharged by the entering of an appeal, but is merely suspended, and the judgment entered on the appeal is a lien upon property of the defendant, and is to be treated as being of the date when the judgment appealed from was entered." *Id.* at 453, 34 S.E. at 607.

The authorities above reviewed support the creditors' position that they acquired a lien on the date they obtained judgment, notwithstanding the fact that execution was not issued and entered on the general execution docket until after the judgment was affirmed. While that position is correct with respect to a lien on personal property, later statutes provide an opposite result for liens on real property.

In 1939, in enacting a *lis pendens* statute, the legislature provided that:

". . . [N]o judgment, execution, or attachment shall bind the property of the defendant or defendants, as against the interest of third parties acting in good faith and without notice, where no notice of Lis Pendens as hereinbefore required has been filed . . . until the execution issuing on said judgment has been recorded in the General Execution Docket . . ." [1939] Ga.Laws 345, 347, *codified at* Ga.Code Ann. § 67–2804. (emphasis added).

Like the 1889 law discussed above, Ga. Code Ann. § 39–701, this *lis pendens* statute protects "third parties acting in good faith and without notice" and, as such, is susceptible to a similar interpretation that it does not affect the principle that a judgment becomes a lien upon its rendition. An examination of a more recent statute, Ga. Code Ann. § 110–515, however, reveals that that principle, at least with respect to real property, has been conclusively interred.

The study begins with consideration of [1958] Ga.Laws 379:

"Section 1. No judgment, decree or order of any superior court, county court, city court, justice court, municipal court or any United States Court in this State shall in any way affect the title to real property until said judgment, decree or order is recorded in the office of the clerk of the superior court of the county in which such real property is located and an index to one or more of the real estate records in the office of such clerk.

"Section 2. For the purpose of this Act, the term 'real estate records' shall include deed books, lis pendens dockets, Federal Tax Lien Docket, and attachment dockets.

"Section 3. For the purpose of this Act, a general execution shall not be construed as being a judgment, decree or order."

While this statute, by excepting from its application general executions, may have left the prior law with respect to real estate liens arising from executions intact, its amendment in 1966 clearly manifests an intention to date liens from the time of recording on the general execution docket. The law, with those amendments emphasized, provides:

"Section 1. No judgment, decree, or order or *any writ of fieri facias issued pursuant to any such judgment, decree, or order* of any superior court, county court, city court, justice court, municipal court, or any United States court shall, in any way, affect *or become a lien* upon the title to real property until said judgment, decree, order *or writ of fieri facias* is recorded in the office of the clerk of the superior court of the county in which such real property is located, and is entered in the indexes to the *applicable records* in the office of such clerk. . .

"Section 2. Definitions. The term '*applicable records*' shall include deed books, lis pendens dockets, federal tax lien dockets, *general execution dockets* and attachment dockets." [1966] Ga.Laws 142, *codified at* Ga.Code Ann. § 110–515.

Section 3 of the 1958 law, which excluded general executions, was expressly repealed. The law also repealed "[a]ll laws and parts of laws in conflict with this Act." [1966] Ga.Laws 142, 143.

The 1966 law, Ga.Code Ann. § 110–515, therefore, brings previously excluded executions within its recordation requirement and, unlike its predecessor, provides that a judgment or execution does not "become a lien" until recordation. At the same time, it retains the language that, until recordation, judgments and executions are not to affect title to real property "in any way". The obvious import of the new statute, then, is to allow all persons—whether purchasers or creditors—to rely on courthouse records to determine what claims to real property exist. It does this, simply, by providing that there is no claim against real property until the claim is properly recorded.

The relation back theory proposed by the creditors is premised on the provision of Ga.Code Ann. § 110–506, that a judgment "loses no lien or priority" by virtue of an appeal and that a lien "takes effect from the first judgment" if the trial court judgment is affirmed. Reading this statute, as the creditors do, so as to date the creation of a lien from the date of an unrecorded judgment is inconsistent with the unambiguous rule of the 1966 statute, Ga.Code Ann. § 110–515, that no lien on real property arises from a judgment or execution until it is entered on the general execution docket. To the extent that there is conflict between the old and new legislation, the newer statute, with its express provision that conflicting laws be repealed, must prevail. Under the later statute, there is no lien on real property until recordation. Because that

event in this case occurred within four months of the filing of the bankrupt's petition, the creditors' lien on real property is subject to invalidation under section 67a of the Bankruptcy Act.

The requirement of recordation in Ga.Code Ann. § 110–515 as a prerequisite to the creation of a lien applies only to liens on real property. As to personal property, the rule of Ga.Code Ann. § 110–507 that a judgment "shall bind all the property of the defendant" and section 110–506 relating to the effect of an appeal apply to establish the date of the trial court judgment as the date on which the creditors obtained a lien on the personal property of the bankrupt. This date being more than four months prior to the filing of the petition, the lien as to personal property is not subject to the proscriptions of section 67a.[3]

Determining that the creditors' lien as to real property was obtained within four months of the filing of a bankruptcy petition is not alone sufficient to invalidate the lien under section 67a; there must also be a finding that the bankrupt was insolvent when the lien was obtained or that the lien was obtained in fraud of the Bankruptcy Act. The bankruptcy judge in his opinion did not find that either of these conditions was met, and the record before this court contains no such evidence. Accordingly, the ruling must be reversed for further proceedings not inconsistent with this opinion.

---

3. The court expresses no opinion on the rights of the creditors and the trustee with respect to this personal property lien under other provisions of the Bankruptcy Act or Georgia law.