**Jacklyn M. McKENNA, et al., Plaintiffs,**

v.

**WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
Defendant.**

**Civ. A. No. 85–1513.**

United States District Court,
District of Columbia.

June 30, 1986.

---

**8**

Marylin Jenkins White Koonz, McKenney & Johnson, P.C., Washington, D.C., for plaintiffs.

Sara E. Lister, Washington, D.C., for defendant.

## MEMORANDUM ORDER

JOHN H. PRATT, District Judge.

This action comes before us on defendant's motion to dismiss, or in the alternative, for summary judgment. It is undisputed that this case is one of first impression. The sole issue is whether the defendant Washington Metropolitan Area Transit Authority (WMATA) can be held liable in damages for the work-related death of one of its employees under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.* Upon consideration of the briefs of the parties, the extensive legislative histories of the relevant statutes, and the entire record herein, we hold that the plaintiff has no cause of action under FELA and dismiss this suit in accordance with the following opinion.

## DISCUSSION

Plaintiff's now deceased husband was an employee of defendant WMATA at the time of his death on February 12, 1985. Plaintiff alleges that on that date while her husband was installing new rail wheels on a maintenance truck, the structure collapsed upon him inflicting injuries which caused his death. Complaint ¶¶ 5, 6. Defendant has moved to dismiss or in the alternative for summary judgment. On a motion to dismiss, the court must presume all factual allegations of the complaint to be true and make all reasonable inferences in favor of the non-moving party.[1] Plain-

---

1. Defendant moves to dismiss the complaint on the ground that the court lacks subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). We choose, however, to dismiss this action for failure to state a claim pursuant to Rule 12(b)(6). Defendant essentially contends that the federal statute upon which plaintiff's claim is premised, FELA, is inapplicable either because WMATA is not a railroad within the meaning of the statute or because subsequent legislation repealed FELA coverage. Courts, however, have uniformly held that where a federal statute provides the basis for both the Court's jurisdiction and the merits of the claim, the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to Rule 12(b)(6) or Rule 56. *E.g., Timberlane Lumber Co. v. Bank of America National Trust and Savings Association,* 749 F.2d 1378, 1381 (9th Cir.1984), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985); *see Bell v. Hood,* 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946); *see generally* 2A J. Moore, Moore's Federal Practice ¶ 12.07 [2.–1]. Whereas the court may determine factual disputes under Rule 12(b)(1), all of the plaintiff's factual allegations must be accepted as true under Rule 12(b)(6). *E.g., Espinoza v. Missouri Pacific Railroad Co.,* 754 F.2d 1247, 1248 n. 1 (5th Cir.1985); *see generally* 2A J. Moore, Moore's Federal Practice ¶ 12.07[2.–5]. This particular distinction between these two grounds for dismissal is, however, without significance in the instant case. Although we permitted plaintiff by order of January 10, 1986, to conduct discovery relating to the jurisdictional issue raised in defendant's motion, plaintiff has failed to proffer any material outside the complaint which raises a genuine issue of material fact with relation to this court's jurisdiction. Thus we further choose not to treat defendant's motion as a motion for summary judgment. Fed.R.Civ.P. 12(b); *see generally* 2A J. Moore, Moore's Federal Practice ¶ 12.09[3].

tiff claims that the defendant is subject to FELA and is accordingly liable in damages for her husband's death.

FELA provides that "[e]very common carrier by railroad while engaging in commerce" shall be liable for the injury or death of an employee resulting in whole or part by the carrier's negligence. 45 U.S.C. § 51. The title of the Act, *i.e.,* Federal Employees Liability Act is thus a misnomer; by the statute's express terms, it applies only to railroads. As the Supreme Court has observed, FELA

> was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety.... [I]t was the conception of this legislation that the railroad was a unitary enterprise, its economic resources obligated to bear the burden of all injuries befalling those engaged in the enterprise arising out of the fault of any other member engaged in the common endeavor.

*Sinkler v. Missouri Pacific Railroad Co.,* 356 U.S. 326, 329–30, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958); *see also Parden v. Terminal Railway of the Alabama State Docks Department,* 377 U.S. 184, 187–88, 84 S.Ct. 1207, 1210–11, 12 L.Ed.2d 233 (1964) (In making FELA applicable to every common carrier by railroad, Congress meant the statute to apply to railroads, whether state-owned or privately-owned). There is no dispute between the parties that the Act is restricted to railroads. Rather, the only disagreements concern whether the defendant is a railroad within the meaning of the statute, and even assuming it is, whether WMATA has been exempted from coverage under FELA.

The defendant WMATA was established as a public service agency in 1966 pursuant to a Congressionally approved interstate compact among the states of Virginia and Maryland and the District of Columbia. WMATA Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966) (codified as amended at D.C.Code Ann. § 1–2431 (1981 & Supp. 1985)). We need not review here the extensive legislative history of the WMATA Compact compiled by the defendant to emphasize that the purpose of the Compact was to improve public transportation for the national capital region and that WMATA was accordingly charged, *inter alia,* with the development, construction, and operation of a regional subway-rapid rail system. *See WMATA v. Johnson,* 467 U.S. 925, 104 S.Ct. 2827, 2829, 81 L.Ed.2d 768 (1984); *Morris v. WMATA,* 781 F.2d 218, 39 Empl.Prac.Dec. (CCH) ¶ 35,824 (D.C. Cir. 1986); *WMATA v. One Parcel of Land,* 706 F.2d 1312, 1314 (4th Cir.), *cert denied,* 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983). Plaintiff grounds this action on the sole contention that WMATA "was and is operating a railway in interstate commerce," Complaint ¶ 3, and therefore, is an employer who is subject to liability within the meaning of FELA. Indeed, in her opposition to the pending motion to dismiss, the plaintiff submits that the specific terms of coverage in the Act are clear and unambiguous [2] and further that it is "equally clear" that WMATA meets these standards.

The defendant moves to dismiss this action on two grounds. First, the great bulk of the defendant's motion is devoted to its contention that WMATA is not a railroad. Defendant principally relies on a long-recognized exception within FELA for "street railways" and argues that its subway-rapid rail system should be considered a street railway for purposes of the Act and thus exempted from FELA liability. Defendant characterizes street railways as being constructed and operated on and along the streets of a city and its suburbs to accomodate street travel by transporting passengers and their handheld baggage from point to point in a single area. Defendant reviews at length the legislative history of the WMATA Compact to emphasize the intent of the signatories to develop a strictly *local* transit system and to point out differences in treatment by Congress in

---

**2.** Her simplistic position is that WMATA is a "common carrier by railroad ... engaging in commerce between any of the several states ... or between the District of Columbia and any of the states." 45 U.S.C. § 51.

terms of both funding and regulation between local mass transit systems and railroads. It points out that, unlike railroads covered by FELA, WMATA is not subject to regulation by the Department of Transportation, but rather by the Urban Mass Transit Administration and that its employees in their labor relations are not protected by the Railway Labor Act. It also points out a number of other differences which set WMATA apart from FELA coverage.[3]

Alternatively, defendant argues that the WMATA Compact was intended to exempt WMATA from FELA liability. Nowhere in her opposition does plaintiff address defendant's contention in this regard, but instead appears to be content to rely on her belief that the terms of FELA coverage are so clear and unambiguous in applying to WMATA that further response is unnecessary. Plaintiff's analysis, while flawed, is also inconsistent. Whereas plaintiff's position rests entirely on the alleged lack of ambiguity in the terms of FELA coverage, she totally disregards the terms and thrust of the WMATA Compact and the Congressional consent legislation which were enacted long after FELA. These are clear on their face and control the question of defendant's liability for an employee's work-related death. Because we conclude that this subsequent legislation exempts the defendant from FELA liability, we need not reach the question whether WMATA is a railroad within the meaning of FELA.

This is for the basic reason that the WMATA Compact expressly provides for WMATA's tort liability. D.C.Code Ann. § 1–2431(80). It is fundamental to disposition of this action to recognize that the WMATA Compact, and therefore this particular provision, have the force and effect of *federal* law. *Morris v. WMATA*, 781 F.2d 218, 39 Empl.Prac.Dec. (CCH) ¶ 35,824 (D.C.Cir.1986); *WMATA v. One Parcel of Land*, 706 F.2d 1312, 1316–18 (4th Cir.), *cert denied*, 464 U.S. 893, 104 S.Ct. 238, 78

L.Ed.2d 229 (1983). "[T]he consent of Congress transforms the State's agreement into federal law under the Compact Clause." *Cuyler v. Adams*, 449 U.S. 433, 438, 101 S.Ct. 703, 707, 66 L.Ed.2d 641 (1981); *see also Texas v. New Mexico*, 462 U.S. 554, 564, 103 S.Ct. 2558, 2565, 77 L.Ed.2d 1 (1983). Thus, even if we assume *arguendo* that FELA's terms of coverage are clear and unambiguous and that WMATA constitutes a railroad within the meaning of the Act, we cannot ignore, but indeed must take note of subsequent action by Congress on precisely the same subject matter of WMATA's tort liability.

Section 80 of the WMATA Compact provides in pertinent part:

The Authority shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed *in the conduct of any proprietary function, in accordance with the law of the applicable signatory* (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. (emphasis supplied).

D.C.Code Ann. § 1–2431(80). The language of § 80 is clear and unambiguous: the exclusive remedy for torts committed by WMATA and its employees arising out of proprietary functions[4] shall be under *signatory*, rather than federal, law. As plaintiff contends in her own behalf, where the language of an enactment is clear, "there is no occasion for construction and the statute must be given effect according to its plain and unambiguous meaning." *National Association of Broadcasters v. F.C.C.*, 740 F.2d 1190, 1202 (D.C.Cir.1984); *see also Connecticut v. Schweiker*, 684 F.2d 979, 990 (D.C.Cir.1982), *cert. denied*, 459 U.S. 1027, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983). Thus the Court of Appeals for

---

**3.** Among these is the Safety Appliance Act which does not apply to "street railways." 45 U.S.C. § 8.

**4.** Defendant is willing to concede for the purpose of this motion that WMATA was engaged in a proprietary function at the time plaintiff's deceased received his fatal injuries. Def. Mot. at 40 n. 10.

this Circuit addressing this question in a recent decision clearly stated that "§ 80, specifically and expressly delineates the scope of WMATA's consent to be sued." *Morris v. WMATA*, 781 F.2d 218, 39 Empl Prac.Dec. (CCH) ¶ 35,824 (D.C.Cir.1986). The court further emphasized that, whereas the issue whether WMATA's conduct constitutes a governmental or proprietary function must be determined as a matter of federal law, the Compact plainly provies that "WMATA's *liability* for its torts committed in the conduct of any proprietary function shall be determined 'in accordance with the law of the applicable signatory.'" *Id.* (emphasis in original).

Not only does the WMATA Compact provide for the exclusive applicability of signatory law on the question of tort liability, but it also expressly exempts WMATA from federal law, except where related to safety or where expressly provided for by the Compact. Section 77 provides in pertinent part:

> Except as otherwise provided in this Title, any transit service rendered by transit facilities owned or controlled by the Authority and the Authority or any corporation, firm or association performing such transit service pursuant to an operating contract with the Authority, shall, in connection with the performance of such service, be exempt from all laws, rules, regulations and orders of the signatories and of the United States otherwise applicable to such transit service and persons, except that laws, rules, regulations and orders relating to inspection of equipment and facilities, safety and testing shall remain in force and effect.

D.C.Code Ann. § 1–2431(77). In the instant case, the WMATA Compact not only does not specifically provide for the applicability of FELA, but rather explicitly supplants otherwise applicable federal law with signatory law.

Consistent with this general exemption from regulation, the legislation embodying Congress' consent to the WMATA Compact expressly amends federal legislation in conflict. Section 5 provides in pertinent part:

> [A]ll laws or parts of laws of the United States and of the District of Columbia inconsistent with the provisions of Title III of this Act are hereby amended for the purpose of this Act to the extent necessary to eliminate such inconsistencies and to carry out the provisions of this Act and Title III.

Pub.L. No. 89–774, 80 Stat. 1324 (1966). "To the extent that there is a conflict between the old and new legislation, the newer statute, with its express provision that conflicting laws be repealed, must prevail." *In re Tinsley*, 421 F.Supp. 1007, 1011 (M.D. Ga.1976); *see also In re Lawaetz*, 728 F.2d 225, 229 (3d Cir.1984). Thus in a case raising a similar issue concerning the applicability of FELA, the Court of Appeals for this Circuit concluded that FELA could not apply to a case where a subsequently enacted statute, the Longshore and Harbor Workers' Compensation Act, was applicable and specifically provided in "plain" language that the liability of an employer under the Act was exclusive and in place of all other liability of such employer to the employee. *Harmon v. Baltimore & Ohio Railroad*, 741 F.2d 1398, 1405 (D.C.Cir. 1984). We likewise find that the unambiguous intent of the language of the WMATA Compact and its companion consent legislation provide an exclusive remedy for the work-related death of an employee under signatory law and expressly preclude coverage for the same injury under any other federal statute.

Our reading of the plain meaning of the Compact is entirely consistent with the well-established understanding of Section 80 as a *limited* waiver of sovereign and 11th Amendment immunities from suit. *See, e.g., Morris v. WMATA*, 781 F.2d 218, 39 Empl.Prac.Dec. (CCH) ¶ 35, 824 (D.C.Cir. 1986); *Strange v. Chumas*, 580 F.Supp. 160, 162 (D.D.C.1983). In construing the WMATA Compact narrowly, we adhere to the Supreme Court's unequivocal admonition that "we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as leave no room of any other reasonable construction.'" *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39

**12**

L.Ed.2d 662 (1974). In the instant case, the plaintiff offers no indication, nor can we find any suggestion in the language of the WMATA Compact, the companion consent legislation, or the legislative history, of an intent on the part of the signatories and Congress to make a party such as WMATA liable under FELA for the work-related death of an employee.

In accordance with the foregoing, it is by the court this 30th day of June, 1986

ORDERED that defendant's motion to dismiss be granted, and it is

FURTHER ORDERED that this action be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).