**In re HYDRO–CHEM PROCESSING, INC. and Engineered Steel Products of Atlanta, Inc., Debtors.**

**John W. RAGSDALE, Jr., As Trustee, Plaintiff,**

**v.**

**BLAW KNOX CORP., Electralloy Corp., The Export–Import Bank of the U.S., Fisher Controls International, Inc., Fisher Controls Company of Canada, Ingersoll Rand Co., Manior Electroalloys Corp., Radnor Alloys, Inc., Smither Equipment, Inc., Georgia Department of Labor, Internal Revenue Service, et al., Defendants.**

Bankruptcy No. 91–82431.
Adv. No. 93–6694.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 6, 1995.

John W. Ragsdale, Jr., Atlanta, Georgia, for Debtors.

R. Michael Thompson, Thompson, O'Brien, Kemp & Nasuti, P.C., Norcross, GA, for Defendant Blaw Knox Corp.

Richard W. Roeder, Titusville, PA, for Electralloy Corp.

Amy Berne Kaminshine, United States Attorney's Office, Atlanta, GA, for Export–Import Bank of the U.S.

James A. Pardo, Jr., King & Spalding, Atlanta, GA, for Fisher Controls International, Inc. and Fisher Controls Company of Canada.

J. Michael Lamberth, Atlanta, GA, for Ingersoll Rand Company.

Donald J. Snell, Canton, GA, for Manior Electroalloys Corp.

Robert M. Dyer, McVay & Stubbs, Canton, GA, for Radnor Alloys, Inc.

Otis Byron Meredith, III, Wallace & De Mayo, P.C., Norcross, GA, for Smither Equipment, Inc.

Jon D. Pifer, Ann Reid, U.S. Department of Justice, Tax Division, Washington, DC, for United States of America (Internal Revenue Service).

### ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

This adversary proceeding is before the court on Trustee's motion for summary judgment. Trustee proposes in the motion for summary judgment a distribution, based upon the priority of the relevant liens of the claimants, of certain encumbered funds in Trustee's possession as a result of liquidation of Debtor's estate. The issue presents a conflict of lien priority law between Georgia state law and federal law, as a sizable IRS tax lien falls, chronologically, in the middle of four state liens which state law accords equal priority.

The following facts appear to be undisputed:

1. Trustee holds a fund in the amount of $675,175.22 (the "Fund"), which represents the net proceeds from the sale of property of the Debtor to Pro–Quip Corporation.
2. The Fund is subject to numerous liens.[1] The total of the liens asserted against the Fund

1. In the original complaint, Trustee named 70 lien claimants as defendants. As a result of either consent order or default judgment, the majority of the original defendants have no lien or interest of any kind in the Fund.

exceeds the amount of the Fund. The liens relevant to Trustee's motion are:

a. Export–Import Bank of the U.S. ("Eximbank"), pursuant to a UCC–1 financing statement filed in Cherokee County Superior Court January 31, 1989: $ 96,603.57

b. State of Georgia Department of Labor ("Georgia Labor"), pursuant to writs of *Fieri Facias* filed in Cherokee County Superior Court January 4, 1991 and February 26, 1991: $ 17,759.11

c. Blaw Knox Corporation ("Blaw Knox"), pursuant to a writ of *Fieri Facias* filed in Cherokee County Superior Court April 19, 1991, on a judgment obtained April 16, 1991: $ 89,408.08
(plus postpetition interest)

d. Ingersoll Rand Company ("Ingersoll") pursuant to a writ of *Fieri Facias* filed in the Cherokee County Superior Court June 7, 1991, on a May 9, 1991 judgment obtained from Fulton County Superior Court: $ 94,440.88

e. Radnor Alloys, Inc., ("Radnor"), pursuant to a writ of *Fieri Facias* filed in Cherokee County Superior Court June 7, 1991, on a judgment obtained May 28, 1991: $115,607.84

f. Manior Electralloys Corporation ("Manior") pursuant to a writ of *Fieri Facias* filed in Cherokee County Superior Court June 11, 1991 on a judgment obtained from the Lorrain County, Ohio Court of Common Pleas, domesticated in Georgia in Cherokee County Superior Court June 11, 1991: [2] $ 82,323.57
(plus postpetition interest)

g. The United States of America ("IRS"), pursuant to a Notice of tax lien filed in Cherokee County Superior Court June 21, 1991: approximately $800,000

h. Electralloy Corporation ("Electralloy"), pursuant to a writ of *Fieri Facias* filed in Cherokee County Superior Court July 29, 1991, on a judgment obtained July 9, 1991: $210,993.00

i. Fisher Controls International, Inc. and Fisher Controls Company of Canada (collectively "Fisher"), pursuant to a writ of *Fieri Facias* filed in Cherokee County Superior Court July 30, 1991, on a judgment obtained July 30, 1991: $461,166.76

j. Smither Equipment, Inc. ("Smither"), pursuant to a writ of *Fieri Facias* filed in Fulton County Superior Court Sept. 13, 1991, on a judgment obtained from the State Court of Fulton County [3] 8/30/91: $ 39,957.19
(plus prepetition post-judgment interest)

Trustee suggests that the administrative expenses to be paid from the Fund should be allocated *pro rata* among the secured creditors receiving distributions from the fund.

The priority of Eximbank, Georgia Labor, and Blaw Knox appears to be undisputed. The dispute arises with respect to the remaining claims, i.e. those of Ingersoll, Manior, Radnor, IRS, Electralloy, Fisher and Smither. All of those claimants except IRS are judgment lien creditors.

## DISCUSSION

All the claimants and Trustee clearly and cogently presented their respective positions in this contest of lien priorities for purposes of payment. Rather than recount the respective positions of each creditor, the dispute will be framed, initially, by a description of the positions maintained by the Trustee, which includes the positions of Trustee, Ingersoll, Manior, Radnor, and IRS, and by Fisher, which includes the positions of Fisher and Electralloy.

Trustee proposes that the priority of the above-described liens should be based upon the dates the liens were recorded. If Trustee's position is accepted, the Fund will be depleted by the IRS claim, leaving nothing for Fisher, Electralloy and Smither, as each of those claims were recorded after the IRS claim was recorded. Fisher asserts that application of Georgia law would require that all of the judgment liens for which the judgments were obtained at the same term of court should be considered of equal date, and therefore, of equal priority. Fisher, however, further proposes that, in order to accord effect to both federal and state law, those claimants whose liens were recorded before the IRS tax lien will be deemed to have

---

**2.** This representation of the facts as to Manior's judgment lien differs slightly from Trustee's statement of undisputed facts, but is based upon the documents in Manior's answer.

**3.** Only Smither's judgment was recorded in Fulton County rather than Cherokee County. Smither's judgment is perfected pursuant to

O.C.G.A. 9–12–81, however, because Debtor was a resident of Fulton County as well as Cherokee County. No party to this proceeding has argued that Smither's claim lacks validity or priority because it was recorded in Fulton County instead of Cherokee County.

captured a fund in which the later claimants will share *pro rata*. Although the facts which have emerged during the course of the proceedings on Trustee's motion for summary judgment will require some refinement of the result proposed by Fisher, Fisher's position has merit.

Pursuant to 11 U.S.C. § 724(b), only lienholders whose liens are senior to a federal tax lien may obtain a distribution of property of the estate ahead of the IRS. Additionally, federal tax law provides that when a notice of tax lien has been duly recorded, the IRS lien takes priority over all other liens (with certain exceptions not applicable to the facts in this proceeding). 26 U.S.C. § 6323. Internal Revenue Regulations further provide that a judgment lien will take priority over a tax lien only if (a) it has been previously determined in amount, and (b) appropriately recorded or docketed, "[i]f recording or docketing is necessary under local law before a judgment becomes effective against third parties." Internal Revenue Regulation (26 C.F.R.) § 301.6323(h)–1(g). Trustee thus advocates determination of the seniority of the various judgment liens based upon the date those liens were recorded.

■ Under Georgia law, no judgment lien is effective against third parties until the judgment is entered on the General Execution Docket (GED) for the Superior Court of the county in which the judgment debtor is a resident. O.C.G.A. § 9–12–81. When so recorded, however, for priority purposes, the judgment lien relates back to the date of rendition of the judgment and is considered of equal date (and, therefore, equal priority) with other perfected liens arising from judgments rendered at the same term of court. O.C.G.A. § 9–12–87; *National Bank of Georgia v. Morris–Weathers Co.,* 248 Ga. 798, 286 S.E.2d 17 (1982).[4] *Pro rata* distribution from property subject to more than one judgment lien is appropriate where the aggregate amount of the liens exceeds the value of the property. *Wellington v. Lenkerd Co.,* 157 Ga.App. 755, 278 S.E.2d 458 (1981).

■ The relevant term of court in Cherokee County (the Blue Ridge Circuit) commenced the second Monday in May, May 13, 1991, and ended August 31, 1991. The relevant terms of court in Fulton County (the Atlanta Circuit) commenced the first Monday in May, May 6, 1991, and ended June 30, 1991 (Ingersoll), and began the first Monday in July, July 1, 1991, and ended August 31, 1991 (Smither). Therefore, it appears that the judgments of Manior, Radnor, Electralloy, and Fisher were all rendered during the same term of Cherokee County Superior Court and, thus, are of equal date and priority with the Radnor judgment, rendered May 28, 1991, which was the earliest judgment obtained in that term of court. As the Ingersoll judgment was rendered during a different, earlier term of court, it stands alone and prior to the later Cherokee County judgments. *Eads v. Southern Surety Co.,* 178 Ga. 348, 173 S.E. 163 (1934). As the Smither judgment was rendered during a different, later term of court, it is subordinate to liens on judgments obtained during an earlier term of court.[5] *Id.* [See chart at Figure 1].

4. The case specifically rejected the holding in the case of *In re Tinsley,* 421 F.Supp. 1007 (M.D.Ga. 1976), which held that the single date and sole criterion for measuring priorities between competing judgment liens and for determining the effect of a judgment on the title to real property was the date of recordation of the judgment.

5. The overlapping dates of the relevant terms of court set forth above illustrate an anachronism in the use of terms of court as a vehicle for determining priority of judgment liens. Smither's lien relates back to the August 30, 1991 judgment date. Because the term of court to which it dates for priority purposes began July 1, however, it becomes a "different, later" term of court. In fact, however, Cherokee's similar term of court, which began May 13 and ended August 31 in 1991, encompasses two terms of Fulton Court, the earlier of which began May 6 and the later of which ended August 31. Thus a lien obtained through a judgment rendered August 31 in Cherokee County would be prior to a lien obtained by judgment rendered August 30 in Fulton, because Fulton's relevant term of court did not begin until July 1.

Recent technological advances in transportation and telecommunication, as well as the proliferation of multi-county, multi-state and multinational companies, render it increasingly likely that competing judgment liens will be obtained from different circuits with different terms of court. Because of the non-standardization of terms of various courts set forth in the Georgia Code, Ingersoll wins full payment in this lien contest because it was able to obtain its Fulton

A complication arises, however, because the IRS tax lien is interposed between the judgments of Manor and Radnor, and the judgments of Electralloy and Fisher. Without dispute, the liens of Manor and Radnor are senior to the IRS tax lien. Also, without dispute, the IRS lien is senior to the liens of Electralloy and Fisher, as those liens were neither determined as to amount nor recorded prior to the recordation of the Notice of tax lien. The refined issue, therefore, is whether this court can give effect to both the federal law and the state law applicable to determination of priority of liens.

■ A firmly held principle of bankruptcy law is that, except in those areas specifically addressed by Congress in a federal statute, property rights in a debtor's assets are determined in accordance with state law. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." (Citations omitted.) ... [T]he federal bankruptcy court should take whatever steps are necessary to ensure that the [secured creditor] is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued.

*Id.* at 55, 56, 99 S.Ct. at 918, 919. Therefore, to the extent that state law may be given effect in defining a claimant's interests in property of a debtor, the court has a duty to apply state law to assure that the claimant is not deprived of those state law property rights.

Essentially this court has three choices as to determining the priority of the liens in this case: First, apply only federal law and, therefore, look only to the dates the liens were recorded, with the result that Fisher and Electralloy get nothing and lose the benefit of their rights under state law to equal priority with Radnor and Manor. Second, apply only state law and, therefore, move Fisher and Electralloy ahead of IRS, with the result that Radnor, Manor, Electralloy and Fisher share *pro rata* in the balance of the Fund remaining after payment in full of the first four claimants and IRS loses its federal law priority and receives nothing. Third, apply federal law to determine that the IRS claim has priority over the Electralloy and Fisher claims, with the result that Electralloy and Fisher receive none of the funds to which the IRS is entitled; then apply state law by creating a fund equal to the amount of the claim of Radnor plus the claim of Manor and then distributing the fund *pro rata* among Radnor, Manor, Electralloy and Fisher.

■ This court is bound by the Supremacy Clause[6] to apply federal law to determine the priority of the claim of the IRS. *U.S. v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1982). Therefore, only the third choice fulfills the bankruptcy court's duty to employ the federal law applicable to the federal tax claim and also assure that the state court judgment lien claimants are not deprived of their state law property rights. The application of state law is especially appropriate in the instant case as the state law, O.C.G.A. § 9–12–87, is intended to achieve a purpose also intended by the Bankruptcy Code: to achieve equality of distribution among creditors by avoiding a "race to the courthouse." *See, National Bank of Georgia v. Morris–Weathers Co.*, 248 Ga. 798, 286 S.E.2d 17 (1982). Creditors who obtain judgments in the same term of court in the same county have equal lien priority on their writs of *Fieri Facias*.

---

judgment before the Cherokee County Superior Court's term even began. Similarly, Smither loses this lien contest even though it obtained its judgment before the end of the Cherokee term of

court, because it filed in Fulton County, where new terms of court commence every two months.

**6.** U.S. Const., Art. VI, cl. 2.

**134**

Trustee also proposed in his motion for summary judgment that the administrative expenses allocated to and payable from the Fund should be allocated *pro rata* among the claimants who receive payment from the Fund. The responses of Blaw Knox and Ingersoll oppose allocation of administrative expenses among the claimants to the Fund.

Section 506(c) provides:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

Section 724(b) provides that property subject to tax liens shall be distributed first to senior lienholders and next to priority claimants asserting claims under § 507(a)(1)–(7). Administrative expenses are accorded priority under § 507(a)(1). The plain language of both § 506 and § 724 appears to contemplate that administrative expenses are a separate claim against the relevant property. Under § 506, the trustee's costs and expenses are deducted ahead of payment of the secured creditor's claim. *In re AFCO Enterprises, Inc.*, 35 B.R. 512 (Bankr.D.Utah 1983). Under § 724, administrative expenses are deducted after payment of secured creditors' claims but before payment of a tax lien.

Under neither § 506 nor § 724 is a *pro rata* assessment against each of the claimants an option. In the instant case, this court cannot approve such a procedure without consent of all the claimants. As objections to the Trustee's proposal have been raised, it cannot be approved. Accordingly, it is hereby

**ORDERED** that Trustee's motion for summary judgment is granted in part and denied in part: With respect to the Fund identified above, Trustee may distribute the Fund as follow:

(a) Payment in full to Eximbank;

(b) Payment in full to Georgia Labor;

(c) Payment in full to Blaw Knox;

(d) Payment in full to Ingersoll;

(e) Creation of a fund equal to the amount of the allowed secured claim of Radnor plus the amount of the allowed secured claim of Manior. From that fund shall be paid *pro rata*, the claims of Radnor, Manior, Electralloy and Fisher;

(f) Payment of priority claimants as provided in 11 U.S.C. § 724(b)(2); and

(g) The remaining balance of the Fund to the IRS.

As the validity, priority and extent of liens has thus been finally determined pursuant to the above-captioned complaint filed pursuant to Rule 7001, it is further

**ORDERED** that issues regarding allowance of claims, including administrative expenses and other priority claims, will be determined on appropriate motion or other pleading filed in the main case.

IT IS SO ORDERED.

---

**Figure 1**

| Creditor | Mode of Perfection | *Dollar Amount (000's) | Dates of Fi.Fa ♦ Judgment | Relevant County and 1st Day of Court Term |
|---|---|---|---|---|
| Eximbank | U.C.C. Cherokee | $ 96 | n/a (1989) n/a | n/a |
| Ga. Labor | FiFa Cherokee | $ 18 | (1/04/91 & 2/26/91) | (prior) |
| Blaw Knox | FiFa Cherokee | $ 89 | 4/19/91 ♦ 4/16/91 | (prior) |
| Ingersoll | FiFa Cherokee | $ 94 | (judgment Fulton) 6/07/91 ♦ 5/09/91 | Fulton 5/6/91 |

| Creditor | Mode of Perfec-tion | *Dollar Amount (000's) | Dates of Fi.Fa ♦ Judgment | Relevant County and 1st Day of Court Term |
|---|---|---|---|---|
| Radnor | FiFa Cherokee | $116 | 6/07/91 ♦ 5/28/91 | Cherokee 5/13/91 |
| Manior | Ohio ▷ Cherokee | $ 82 | 6/11/91 | Cherokee 5/13/91 |
| IRS | Tax Lien– Cherokee | $800 | 6/21/91 | n/a |
| Electralloy | FiFa Cherokee | $211 | 7/29/91 ♦ 7/9/91 | Cherokee 5/13/91 |
| Fisher | FiFa Cherokee | $461 | 9/30/91 ♦ 7/30/91 | Cherokee 5/13/91 |
| Smither | FiFa Fulton | $ 40 | 9/13/91 ♦ 8/30/91 | Fulton 7/1/91 |

* Amounts used are rounded in thousands, based upon the amounts set forth in Trustee's brief. This chart does not constitute a conclusion by this court that a claim is allowed in a particular amount.