IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 15, 2019 Session

## GLORIA ANDREWS, ET AL. v. NORFOLK SOUTHERN RAILWAY COMPANY

**Appeal from the Circuit Court for Knox County**
**No. 2-468-11     William T. Ailor, Judge**

---

### No. E2018-00508-COA-R3-CV

---

This appeal arises from a widow's suit over her husband's alleged exposure to asbestos. Raymond Andrews ("Decedent") worked for Norfolk Southern Railway Company ("Norfolk Southern") for 24 years before retiring. He later died of lung cancer. Decedent's wife, Gloria Andrews ("Plaintiff"), sued Norfolk Southern in the Circuit Court for Knox County ("the Trial Court") under the Federal Employers' Liability Act ("FELA") alleging that her late husband had been exposed to asbestos while working for Norfolk Southern. Norfolk Southern filed several evidentiary motions which the Trial Court granted. Norfolk Southern subsequently filed a motion for summary judgment, which also was granted. Plaintiff appeals to this Court raising several evidentiary issues. We hold that the Trial Court did not err in excluding lay testimony regarding the presence of asbestos in areas where Decedent worked because these witnesses lacked personal knowledge about the alleged asbestos. Plaintiff was unable to produce any admissible evidence at the summary judgment stage to support her claim that Norfolk Southern failed to maintain a safe working environment. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and W. NEAL MCBRAYER, JJ., joined.

H. Douglas Nichol, Knoxville, Tennessee; and, Robert F. Daley and Elizabeth A. Chiappetta, Pittsburgh, Pennsylvania,[1] for the appellant, Gloria Andrews, Administratrix of the Estate of Raymond Andrews.

---

[1] These attorneys were admitted pro hac vice.

John W. Baker, Jr. and Emily L. Herman-Thompson, Knoxville, Tennessee, for the appellee, Norfolk Southern Railway Company.

## OPINION

## Background

Decedent worked for Norfolk Southern from 1965 until his retirement in 1989.[2] During his career with the railroad, Decedent worked as a brakeman, trainman, and locomotive engineer. In 2000, Decedent was diagnosed with lung cancer. In November 2002, Decedent died from his illness at the age of 63.

In September 2011, Plaintiff sued Norfolk Southern in the Trial Court alleging that her late husband had been exposed to asbestos on the job and that this exposure caused Decedent's lung cancer. Notably, Decedent was a long-time cigarette smoker, having started smoking at age 13 and carrying on at the clip of one pack per day until 2000. Throughout this case, Norfolk Southern has pointed to Decedent's smoking habit as the cause of his lung cancer rather than any workplace exposure to asbestos.

Norfolk Southern filed a number of evidentiary motions, which the Trial Court granted. These motions targeted several pieces of Plaintiff's evidence: historical documents from the Association of American Railroads and the Association of Railway Claim Agents; lay testimony regarding the presence of asbestos in areas where Decedent worked; "State of the Art" knowledge evidence; and OSHA regulations.

A major pillar of Plaintiff's case excluded was the testimony of Dr. Arthur Frank, an expert in occupational medicine, as to causation. In a deposition, Dr. Frank testified to his belief that Decedent's lung cancer was brought about, at least in part, by exposure to asbestos:

Q. Mr. Andrews worked during the diesel era?
A. He did. I don't know exactly when the steam era left that railroad, but he started there, what, in '60...
Q. 5.
A. -- 5. That would have most likely have been the diesel era, and diesel engines are well known to have asbestos on them.
Q. Okay. He didn't work in maintenance?
A. No.

---

[2] Southern merged with Norfolk & Western in the 1980s to become Norfolk Southern.

-2-

Q. He wasn't a shop worker?

A. No. He was a trackman, conductor, fireman and engineer.

Q. He did not work with or handle asbestos or products that may have had some asbestos in them?

A. I don't know exactly what his job duties were. He was probably -- when you say "handled", I can't speak to what he handled. I can say that he was around asbestos-containing materials.

Q. But you don't have any evidence that he worked with asbestos-containing materials by cutting or mixing or touching or anything along those lines?

A. Correct.

Q. At most, he was around it some on occasion as a bystander?

A. He may have been a bystander when others were working with it, or his time as a fireman or engineer may have brought him in contact with it directly when he was in the cab of engines. I have no knowledge of which specific locomotives he worked on, but there are locomotives where there were asbestos-wrapped pipes that workers have often reported they would rest their feet on, for example.

Q. You don't have any evidence of that in this case, do you?

A. I said I don't know specifically what his -- I don't know anything about which locomotives he worked on, so I have no knowledge about that. That knowledge and information would be available. There was even one locomotive I've heard of where the toilet facilities were at the head of the locomotive -- I guess it was running long head forward -- and you'd have to walk through a passageway to get there that was sprayed with asbestos. I've heard those situations as well. So, there were clearly situations that engineers and firemen would have been exposed to asbestos on the equipment they worked.

Q. You believe that this exposure to asbestos played a role in causing this lung cancer?

A. Yes.

Q. This relationship between asbestos exposure and lung cancer, is this a dose-response relationship?

A. Yes, it is.

Q. The more exposure you have, the more likely you are to get the disease?

A. Yes.

Q. Is it true that you can be exposed to asbestos and never get sick from it?

A. Absolutely. We are all exposed to it. We all don't get asbestos disease.

Q. You can certainly be exposed and never develop lung cancer because of it?

A. Correct.

Q. Asbestos is a naturally-occurring substance?
A. Yes.
Q. If I walked downtown here in Philadelphia --
A. You are downtown, but if you walked around outside.
Q. I walked around downtown outside, would I be exposed to asbestos?
A. Yes, sir.
Q. Am I exposed to asbestos in this room?
A. I would think so.

***

Q. If all you had in terms of an exposure history was exposure levels at background, you would be unable to attribute that person's lung cancer to asbestos exposure, wouldn't you?
A. If I am presented with the facts of the case that an individual's exposure to asbestos was nothing other than background, then I would not come into a court and tell a jury with a reasonable degree of medical certainty that asbestos was the cause of that person's lung cancer. If I --
Q. Thank you.
A. -- if I could just finish.
Q. I thought you were through. I'm sorry.
A. -- if I have any evidence of exposure above background, even, for example, where there is background and then similar levels are given off in the workplace, what started out as "X" exposure is now "2X" exposure, then it becomes more likely than not that asbestos was a contributing cause.
Q. So, you are an advocate of the any exposure theory above background is causative?
A. Yes.
Q. Okay. Where can I go to read about that theory?
A. You can read all you want about carcinogenesis theory that tells you that no level of exposure to a cancer-causing agent should be considered as safe. It's exactly what I lectured my class yesterday. You can read that --
Q. Where -- I'm sorry.
A. If you want to -- go read Michael Potter's work on carcinogenesis theory. He was writing about this in the mid 1970s.
Q. What peer-reviewed article of Mr. Potter's can you refer me to on that?
A. That was Doctor Potter, and --
Q. Doctor Potter.
A. -- I was taking a graduate-level course on carcinogenesis theory from him at the National Cancer Institute, and I, frankly, don't remember which articles he used to teach us that.

-4-

Q. So, you can't tell me that there are, in fact, any articles?

A. There are plenty of documents addressing specific carcinogens such as asbestos where OSHA and NIOSH, the EPA have all said -- IARC, I believe, have all said there is no known safe level to asbestos. The American Petroleum Institute in a document in 1948 said that the only safe level of exposure to benzene was zero. So, there are those kinds of writings, but they weren't ubiquitous with regard to every known carcinogen, but the same principle does, in fact, apply.

In its order granting Norfolk Southern's motion to exclude Dr. Frank's testimony, the Trial Court stated as relevant:

(1) That there is no testimony of any scientific evidence that the "*any exposure theory*" presented by Dr. Frank upon which he has based his causation opinion has been tested and the methodology by which it has been tested;

(2) There is no testimony that any evidence has been subject to peer review or publication on Dr. Frank's "*any exposure theory*," or that it has been tested;

(3) There is no testimony as to a potential rate of error of the theory is known;

(4) There is no testimony that the evidence concerning Dr. Frank's "*any exposure theory*" is generally accepted in the scientific community;

(5) There is no testimony that Dr. Frank's research in the field on the subject of the "*any exposure theory*" has been conducted independent of litigation.

The Court finds that the essential factors contained in Rule 702 and 703 of the Tennessee Rules of Evidence, have not been met and Dr. Frank's medical causation opinion fails to satisfy Tennessee's Standards for the Admissibility of Expert Opinion Testimony. The Court further finds that pursuant to Rule 403 of the Tennessee Rules of Evidence, that the testimony's probative value is outweighed by its prejudicial effect based upon the complexity of the case and other evidence to be presented to the jury.

Accordingly, it is ORDERED that Dr. Arthur Frank will not be allowed to testify at the trial of this case on the issue of specific medical causation and will not be allowed to testify that exposure of Raymond Andrews to asbestos caused or contributed to cause Mr. Andrews' lung cancer.

The Trial Court also entered an order excluding certain lay testimony as to the presence of asbestos in Decedent's workplace. In its oral ruling attached to its order, the Trial Court stated in part:

> [T]he reason the Court asked about whether or not the plaintiff's witnesses could identify the supervisor who may have told them, because if -- under Rule 803(1.2), that may have been admissible under the exception.
>
> Based on the statements made in what the Court has reviewed, the Court does not feel that that exception applies, then under (3) Then Existing Mental, Emotional, or Physical Condition, "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" -- the Court was curious about that as well, but the rule goes on to state "but not including a statement of memory or belief to prove the fact remembered."
>
> So based on what the Court has reviewed, the Court does not believe that the lay witnesses will have sufficient foundation to be able to testify that asbestos was contained in the areas where Mr. Andrews worked. They can testify as to what they saw, what they observed, and anything with regard to matters of that nature, however, so the Court will not exclude any testimony with regard to that.

Following its success on the evidentiary motions, Norfolk Southern filed a motion for summary judgment. The Trial Court granted Norfolk Southern's motion for summary judgment. In its February 2018 order, the Trial Court stated as pertinent:

> This matter came on to be heard on the Defendant's Amended Motion for Summary Judgment, the response of the Plaintiff in opposition to the motion as well as the other filings by the parties and the arguments of counsel. The Defendant argues that pursuant to Tenn. R. Civ. P. 56 they are entitled to summary judgment as there are no genuine issues of material fact and they are entitled to a judgment as a matter of law.
>
> The Defendant's motion is based on three (3) grounds:
>
> 1. FELA requires Plaintiff to offer "expert testimony on the issue of specific medical causation unless the injury involved has such an obvious causal origin that lay jurors can assess causation based on their common knowledge and experience;"
> 2. Plaintiff cannot establish notice by her own admission and based on the Court's prior rulings;

-6-

3. Plaintiff cannot prove that the "decedent was exposed to disturbed friable[3] asbestos source (above background levels) in his work;"

In response, the Plaintiff asserts that:

1. The Defendant has failed to rebut **ALL** essential elements of the Plaintiff's claim;
2. The Plaintiff will be able to offer expert testimony on general causation regarding the medical relationships of lung cancer and asbestos exposure and will be able to offer expert and lay testimony as to the presence of asbestos at decedent's workplace and that under FELA the jury may infer specific causation from this general testimony.
3. Under FELA the standard for causation is relaxed and the jury can determine causation from circumstantial evidence from lay and expert testimony;
4. Under FELA Plaintiff only has to prove causation by more than a "scintilla of evidence".

\*\*\*

The Court in prior rulings has excluded Plaintiff's evidence concerning the speculative testimony of the Plaintiff and his co-workers who were told about asbestos and saw what they thought and assumed was asbestos as speculative and not corroborated and therefore not trustworthy and likely to confuse a jury and the prejudicial value outweighing the probative value. There has been no testimony of any friable asbestos material which as one of Plaintiff's experts, Dr. Vance, said creates a hazard. (p. 132, Vance Depo.) In fact, taking the facts in the light most favorable to the non-moving party, there is no testimony of any asbestos containing material in a dangerous condition that the Plaintiff was exposed to.

Regarding Defendant's first argument that FELA requires expert testimony concerning causation, Defendant argues that the Court's ruling on February 3, 2015 concerning Dr. Frank's causation testimony and that the testimony of the decedent's treating oncologist, Dr. Bruce Avery, M.D. does not have expertise in asbestos-related lung cancer and does not, and cannot offer any opinion on medical causation as to asbestos within a reasonable degree of medical certainty and therefore, the Plaintiff cannot meet her burden concerning expert testimony in a toxic exposure case.

---

[3] "Friable" asbestos refers to asbestos that is loose or airborne.

-7-

In reviewing the case law cited by Plaintiff, the Court reviewed *Hardyman v. Norfolk and Western*, 243 F. 3rd 255 (2001), which stated, "we recognize FELA to be a remedial and humanitarian statute ... enacted by Congress to afford relief to employees from injury incurred in the railway industry." *Mounts v. Grand Trunk W. R.R.*, 198 F.3d 578, 580 (6th Cir. 2000) (quoting *Edsall v. Penn Cent. Transp. Co.*, 479 F.2d 33, 35 (6th Cir. 1973)). Congress intended FELA to be a departure from common law principles of liability as a "response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety." *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 807 (6th Cir. 1996) (quoting *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 329, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958)).

The Defendant has offered witnesses who have tested the locomotives that Mr. Andrews worked on who have each testified that there was not asbestos in the areas of the locomotive where Mr. Andrews worked. Under FELA the Plaintiff does not have to prove that the asbestosis was caused solely by the negligence of the Defendant only that is [sic] either caused it or contributed to it.

Dr. Avery, M. D., the Plaintiff's oncologist, testified that the only information he had concerning Mr. Andrews' was either provided by Mr. Andrews and his own treatment of him and that he could not offer testimony within a reasonable degree of medical certainty that Mr. Andrews' lung cancer was caused by asbestos exposure.

The Court further finds that the testimony of Dr. Vance is not sufficient to be submitted to a jury as his testimony is not based on any testing he has done or his own experience or knowledge and is not reliable under rule 702 and 703 of the TRE. Dr. Vance testified that he cannot to a reasonable degree of certainty give an opinion that Mr. Andrews was exposed to asbestos from the ceilings of locomotives. (Depo. p. 120) He has not seen any evidence of asbestos or abatement of the same in the dormitories that Mr. Andrews stayed in at the John Sevier yard. (Depo. p. 121) He has never been on a diesel locomotive, seen a cab heater and never been in, studied or conducted any sampling of any railroad environment. There is no evidence of asbestos containing products where Mr. Andrews worked or that if there were that they were in a friable condition. There is no proof that there was asbestos above background levels that everyone is subjected to on a regular basis. The Court must have some reliable dat[a] to allow an expert to base his opinion on. Here that is not the case.

The testimony of the co-workers of Mr. Andrews that there was asbestos containing material was determined to be unreliable as it was

third-hand information that could not be corroborated and was otherwise speculative.

The defendant cited *Aparicio v. Norfolk & Western Ry. Co.*, 84 F. 3d 803, (1996) which does not apply in this case as it deals with carpel tunnel syndrome which was diagnosed by an orthopedic surgeon after the plaintiff complained of numbness and tingling in his hand. In that case, the plaintiff's work history showed that he was subject to repetitive use of his hands as a result of his work requirements using tools such as air tampers, jack hammers, impact wrenches, claw bars, anchor wrenches, grinders, and spiking guns. The case before this Court is a toxic exposure case and thus the proof is more exacting.

***

In this case, the Defendant has negated an essential element of the plaintiff's case, the negligence of the Defendant to provide a safe work environment free from toxic exposure to asbestos. The testimony of the Plaintiff's witnesses as to possible exposure to asbestos has been speculative and not sufficient to meet the burden to show that the Defendant was negligent or that there was friable asbestos such that could cause or contribute the condition of the Plaintiff. The Plaintiff's proof is of such a speculative nature and has not tied anything to the Defendant that would show that the Defendant was negligent or that there was asbestos in such a form that would expose Plaintiff to dangerous levels causing or contributing to his condition. Therefore, the plaintiff has been unable to bring forth evidence that this plaintiff was exposed to asbestos as a result of the negligence of the defendant and as a result the Motion for Summary Judgment is granted.

IT IS THEREFORE ORDERED that the Defendant's Motion for Summary Judgment is hereby granted.

(Footnote added). Plaintiff timely appealed to this Court.

### Discussion

We restate and consolidate the several issues Plaintiff raises on appeal into the following single dispositive issue: 1) whether the Trial Court erred in granting summary judgment in favor of Norfolk Southern on the basis that Plaintiff failed to submit any admissible evidence that Decedent ever was exposed to asbestos at his work such that Norfolk Southern could be found liable for his illness.

As our Supreme Court has instructed regarding appellate review of a trial court's ruling on a motion for summary judgment:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

* * *

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as

-10-

to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

The most significant case on FELA and asbestos claims in recent years in Tennessee comes from our Supreme Court in *Payne v. CSX Transportation, Inc.*, 467 S.W.3d 413 (Tenn. 2015). In *Payne*, a retired railroad worker sued his former employer after he was diagnosed with lung cancer. The plaintiff in that case was exposed to multiple harmful substances including radiation, fumes, and asbestos. The matter proceeded to a jury trial. *Payne*, while not squarely analogous, is useful for the present case insofar as it grappled with the sort of evidentiary issues implicated herein.

In 1908, Congress enacted FELA as a means by which railroad workers could obtain compensation for their workplace injuries. *Payne*, 467 S.W.3d at 434-35; 45 U.S.C. § 51.[4] Federal substantive law governs FELA claims. *Id.* at 435. "[I]n order to prove the element of causation, a FELA plaintiff need only show that the railroad's negligence 'played any part, even the slightest, in producing the injury or death for which damages are sought.' " *Id.* at 436 (quoting *Rogers v. Mo. Pac. R.R.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)). In *Payne*, our Supreme Court went on to find that the qualitative and differential diagnoses conducted by the plaintiff's experts were valid and that it was "well within the province of the jury to review the expert testimony and determine whether Mr. Payne's exposure to asbestos, diesel fumes, or radiation was substantial enough to be a contributing cause of his cancer." *Id.* at 457-58.

---

[4] "The only possible defendants are railroads engaged in interstate commerce. The only possible plaintiffs are the employees of those railroads who are injured on the job." *Payne*, 467 S.W.3d at 435 n. 16 (quoting *CSX Transp., Inc. v. Miller*, 159 Md.App. 123, 858 A.2d 1025, 1029 (2004)).

On appeal, Plaintiff correctly asserts that her case was gutted by the Trial Court's evidentiary rulings. That, however, does not mean the Trial Court was in error. According to Plaintiff, these rulings as well as the grant of summary judgment to Norfolk Southern should be overturned in light of *Payne*'s holding concerning the admission of qualitative analysis and lay testimony. Norfolk Southern, as one might expect, argues in response that *Payne* is distinguishable and that the Trial Court properly excluded the evidence.

In our judgment, the threshold question is whether Plaintiff submitted any admissible evidence that Decedent was exposed to asbestos while working for Norfolk Southern. Plaintiff's case that Decedent was exposed to asbestos rests on the testimony of lay witnesses that the Trial Court excluded. It is on the basis of these lay witness accounts that Plaintiff's expert evidence is anchored.

We turn again to *Payne*, which addressed lay witness testimony in an asbestos context. Our Supreme Court, in concluding that the trial court did not err in admitting lay witness testimony about asbestos, discussed as follows:

> The Defendant next argues that the admission of lay testimony regarding the presence of asbestos in the workplace warranted a new trial. In particular, the Defendant points to the testimony by Mr. Payne, Mr. Carringer, who was a co-worker, and Mr. Rhodes, a railroad employee who worked under similar conditions, indicating that they had worked in close proximity to materials that contained asbestos, including pipe insulation and brake components. The Defendant insists that this testimony should have been excluded because asbestos can injure a person only if it is in a respirable form, as often occurs when a product containing asbestos is frayed or damaged in some way; thus, according to the Defendant, the "presence of an [asbestos containing material] alone does not entitle a FELA claimant to recovery."

> The Defendant's argument focuses on the sufficiency of the lay testimony to establish the Plaintiff's asbestos claim, whereas the proper inquiry is whether the testimony met the standards for admissibility. Admissibility is determined primarily by the evidentiary rules governing relevance, unfair prejudice, and competence. In this instance, the lay witnesses were competent to testify because they had personal knowledge of the presence of asbestos in their workplaces. Tenn. R. Evid. 602. Regardless of whether their testimony was sufficient to independently satisfy the requirements of a FELA claim, the evidence was relevant in that it made the existence of an injury resulting from asbestos exposure "more

-12-

probable ... than it would be without the evidence." Tenn. R. Evid. 401. The Defendant does not claim that the evidence should be excluded on the basis of unfair prejudice or any other ground of inadmissibility set out in Tennessee Rule of Evidence 403. The Defendant instead claims that the lay testimony was improper under Tennessee Rule of Evidence 701(a), which provides that non-expert witnesses may testify as to opinions only when they are "rationally based on the perception of the witness" and are either "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."

Rule 701(a) authorizes the admission of this testimony. Mr. Payne and Mr. Carringer merely testified to the presence of asbestos without offering a scientific opinion as to whether the condition of the asbestos rendered it capable of causing injury. Although Mr. Rhodes indicated that he had seen "friable" asbestos, his testimony was based upon his training in the field of asbestos removal. *See Gibson v. W.C.A.B. (Armco Stainless & Alloy Prods.)*, 580 Pa. 470, 861 A.2d 938, 948 (2004) (noting that a lay witness may provide a technical opinion regarding asbestos in the workplace based upon "either formal education or practical experience"). Under these circumstances, Judge Wimberly did not err by admitting the lay testimony regarding the presence of asbestos in the witnesses' workplaces, and the admission of that testimony did not warrant a new trial. *See Clark v. ITT Grinnell Indus. Piping, Inc.*, 141 N.C. App. 417, 539 S.E.2d 369, 374 (2000) (holding that lay testimony as to the presence of asbestos in the workplace "was competent evidence to support the ... finding that plaintiff was exposed to asbestos"), *remanded for reconsideration on other grounds*, 354 N.C. 572, 558 S.E.2d 867 (2001); *Olinger v. Pretty Prods., Inc.*, No. 96-CA-29, 1997 WL 33814208, at *4 (Ohio Ct.App. Nov. 7, 1997) (holding that lay testimony as to the presence of asbestos in the workplace, which was based upon personal knowledge of employees, was properly admitted); *Perman v. C.H. Murphy/Clark–Ullman, Inc.*, 220 Or.App. 132, 185 P.3d 519, 523 (Or.Ct.App.2008) (holding that lay testimony as to the presence of asbestos in the workplace was admissible because it was rationally based upon the perception of the witness).

*Payne*, 467 S.W.3d at 445-46.

In the present case, Plaintiff points to various pieces of evidence that Decedent was exposed to asbestos while working for Norfolk Southern. In a deposition conducted as part of litigation prior to his demise, Decedent himself stated as follows:

Q. Let's switch gears and tell me about locomotives. What type of locomotives had asbestos on them?

A. Well, you got me again.

Q. What was the asbestos doing? Where was it in the locomotive?

A. I imagine it was the ceiling, because the ceiling was ripped out. You know what I mean? It's been so long, I'm trying think of the name of the engines. But it's been so long I can't remember the name of those engines and things.

***

Q. Where on those locomotives when you were a brakeman that series or that age locomotive back in the late sixties, where was the asbestos, as best you know, or whatever you were told?

A. It was -- we had some heaters, you know, floor line pipe.

Q. Okay.

A. And also I was told that some of the -- think they call them L-7s had out of the ceiling. I can't swear to that, but I was told that.

Q. So in the late sixties the best memory you have is working on locomotives that had some heater pipes that may have been wrapped with asbestos down on the floor of the cab?

A. Right.

Q. And you were told may have even had some asbestos in the ceilings of the locomotive?

A. Right.

In her own deposition, Plaintiff stated:

Q. So do you know anything about asbestos?

A. Very little.

Q. Would you be able to tell if something was asbestos or wasn't asbestos?

A. No.

Q. And you don't have any personal knowledge about any asbestos-containing materials that would have been on any locomotive, do you?

A. Well, according to my husband -- I don't have proof, but my husband stated that they did tear some asbestos out of an engine that he was on.

Q. That he was on, while he was on it?

A. Yes.

Q. Tell me about that.

A. He just said that they came in and cleared out the, I think, the ceiling or the roof of the engine --

-14-

Q. Okay --
A. -- that contained asbestos.

Russell K. Anderson, a trainman and conductor, stated as follows:

Q. Okay. And pipes, you don't know what covered the pipes, do you?
A. Well, there were a lot of white taping that was on the pipes, and I was told later that it had asbestos in it.
Q. Who told you such a thing?
A. Well, I was told by some of the inspectors that had examined me, and also some of the people that -- not railroad people, that I know of.
Q. Just your lawyers?
A. Yes.
Q. Okay. But you personally, of your own personal knowledge, don't know what that white stuff was, of your own personal knowledge?
A. Well, it was just used to insulate the pipes is all I really know.

Continuing with Plaintiff's lay witnesses, locomotive engineer James Greenlee, Sr. stated:

Q. Now, did anyone ever tell you the brake shoes might have some asbestos in them?
A. We had -- speaking of some of the things that asbestos was involved in, some of the makeup, composition of the shoes, if I'm not mistaken, I'm more than sure they had asbestos in them.
Q. Who told you that?
A. That was talking amongst other fellow workers that had come in contact.
Q. Oh, okay.
A. I don't know -- I'm not no authority on this, that, and the other, so I wouldn't know. But just in general conversation.
Q. So that would be like hearsay, somebody told you that they thought that some of the brake shoes might have asbestos in them, right?
A. Well, when we read certain magazines, railroad magazines, it told us that they had composition asbestos.
Q. Uh-huh.
A. Through our unions and magazines and like that.
Q. Okay.
A. So . . .
Q. Now, you wouldn't know what asbestos looks like, would you?
A. No, I wouldn't.

Jack Edmondson, a brakeman and conductor, stated:

Q. So you're saying that on the F7s you had a grated ceiling --
A. A grated ceiling.
Q. Grated, G-R-A-T-E-D, ceiling?
A. Yes.
Q. With little holes in it?
A. Yeah.
Q. Okay. And that -- do you know what was underneath the grate?
A. Well, I didn't until I --
Q. If anything?
A. Pardon?
Q. If anything?
A. Yeah, I'm fixing to tell you anything. I had been working a week or ten days or something. You make a hard coupling -- because I'm on the lead locomotive with the engineer and they make a hard coupling back here, the trainman did or the conductor, and this stuff come down out of the ceiling. So I say to Joe or Bill or Sam, whoever is running the engine, I said, "Mr. Kesterson, what's that a-falling? Is that dirt?" And he said, "No. That's asbestos."
Q. The engineer told you that?
A. Yeah. I said, "What's asbestos?" Because honestly I didn't know. And he explained to me it was the insulation material. But I'll tell you what, the phrase I used, is I would always tell everybody it looked like a Texas dust storm.

***

Q. All right. You don't have any independent specific knowledge of the composition of any of the insulation that was used on any of these pipes or any part of any locomotive, do you, independent knowledge?
A. No. Just what I was told.
Q. And who were the people who did the telling?
A. Just the old-timers that had been there -- well, the oldest men I worked with was hired in in 1927. And then we had some 1935 men and '37 men and 1941 men. And they just took you under their wing, and you were just an old country boy with a pair of brogan shoes. They liked you. They tried to look out for you.

In *Payne*, our Supreme Court focused on whether the lay witnesses had "personal knowledge of the presence of asbestos in their workplaces." 467 S.W.3d at 445. Here,

-16-

none of the lay witnesses had any "personal knowledge of the presence of asbestos in their workplaces," either from their educational backgrounds or from practical experience. Plaintiff's witnesses relied entirely on what they told, either by lawyers, "old-timers," or other largely unidentified non-supervisory personnel. Plaintiff argues that this goes to the weight of the evidence and not its admissibility. We, as did the Trial Court, disagree. If one of Plaintiff's witnesses had testified that he or she was familiar with asbestos and knew from personal knowledge that it was located in an area where Decedent worked on trains—friable or not—that would be one thing. The record contains no such testimony. This testimony was properly excluded by the Trial Court for the reasons given by the Trial Court as already discussed above. We have reviewed the voluminous record in this case and have found no evidence from sources with personal knowledge, either lay or expert witnesses, that asbestos was located in any of the areas where Decedent worked. In contrast, Norfolk Southern conducted extensive historical research on trains from Decedent's era and submitted its own evidence that Decedent never would have been exposed to asbestos where he worked. Plaintiff did not rebut this evidence, nor indeed present any affirmative, admissible evidence of her own in opposition.

Without some evidence of asbestos exposure in Norfolk Southern's workplace, Plaintiff cannot tie in the medical and historical evidence regarding the carcinogenic risk from asbestos or Norfolk Southern's purported knowledge of the danger. There must be an initial threshold showing of Decedent's exposure to asbestos where he worked. This is an essential element of Plaintiff's claim. It may not be inferred from Decedent's lung cancer alone that Decedent was exposed to asbestos or that Norfolk Southern was negligent. Plaintiff already has conceded below that the mere presence of asbestos on railway locomotives or railcars is not in itself actionable, and the evidence shows that there is a certain background level of asbestos exposure that virtually everyone is exposed to everywhere. The Trial Court did not err in granting Norfolk Southern's motion to exclude the lay testimony, and consequently, an essential pillar of Plaintiff's case was toppled.

Norfolk Southern made a properly supported motion for summary judgment. To withstand summary judgment, Plaintiff had to submit admissible evidence showing that Decedent had been exposed to asbestos while working for Norfolk Southern. Plaintiff failed to do so. That being the case, Norfolk Southern was entitled to judgment as a matter of law. We affirm the judgment of the Trial Court.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Gloria Andrews, Administratrix of the Estate of Raymond Andrews.

_____
D. MICHAEL SWINEY, CHIEF JUDGE